Elouise Pepion COBELL, et al., on her own behalf and on behalf of all those similarly situated, Plaintiffs,

v.

Gale NORTON, Secretary of the Interior, et al., Defendants.

No. CIV.A. 96–1285(RCL).

United States District Court, District of Columbia.

Oct. 22, 2004.

See also 224 F.R.D. 1.

Dennis M. Gingold, Elliott H. Levitas, Kilpatrick Stockton, LLP, Keith M. Harper, Mark Kester Brown, Richard A. Guest, Washington, DC, for Plaintiffs.

Earl Old Person, Browning, MT, pro se.

Brian L. Ferrell, Charles Walter Findlay, III, Cynthia L. Alexander, Henry A. Azar, Jr., J. Christopher Kohn, Jennifer R. Rivera, Washington, DC, John Charles Cruden, Annandale, VA, John Thomas Stemplewicz, Jonathan Brian New, Mark E. Nagle, Sheppard, Mullin, Richter & Hampton, Robert Craig Lawrence, Sandra Peavler Spooner, Seth Brandon Shapiro, Dodge Wells, Gino D. Vissicchio, John R. Kresse, John Joseph Siemietkowski, John Warshawsky, Michael John Quinn, Phillip Martin Seligman, Timothy Edward Curley, Tracy Lyle Hilmer, Amalia D. Kessler, Cynthia Lisette Alexander, Dodge Wells, Gino D. Vissicchio, John Robert Kresse, John Thomas Stemplewicz, John Warshawsky, Tracy Lyle Hilmer, Washington, DC, Terry M. Petrie, Denver, CO, Christina M. Carroll, Daniel Gordon Jarcho, Herbert Lawrence Fenster, Michael James Bearman, McKenna, Long & Aldridge, LLP, Robert D. Luskin, Patton Boggs LLP, John T. Richards, Jr., Trout & Richards, PLLC, B. Michael Rauh, Manatt, Phelps & Phillips, L.L.P., Washington, DC, for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on: (1) the Interior defendants' First Submission [2600] in Compliance With May 28, 2004 Memorandum and Order Regarding Historical Statements of Account ("first submission"); (2) the Interior defendants' Second Submission [2628] in Compliance With May 28, 2004 Memorandum and Order Regarding Historical Statements of Account ("second submission"); and (3) the plaintiffs' Motion [2647] for Reconsideration of the Court's May 28, 2004 Order Regarding Historical Statements of Account ("motion for reconsideration"). Related to these matters are: (1) the Interior defendants' Motion [2682] to Strike Plaintiffs' Motion for Reconsideration of the Court's May 28, 2004 Order Regarding Historical Statements of Account and To Ad-monish Plaintiffs' Counsel to Comply With the D.C. Bar's Voluntary Standards for Civility in Professional Conduct ("motion to strike"); (2) the Plaintiffs' Proposed Notice [2725] for Communications to Individual Indian Trust Beneficiaries submitted pursuant to this Court's September 29, 2004 Order as clarified by this Court's October 1, 2004 Order ("plaintiffs' proposed notice"); (3) the Interior Defendants' Proposed Notices [2724] for Class Communications submitted pursuant to this Court's September 29, 2004 Order as clarified by this Court's October 1, 2004 Order ("defendants' proposed notice"); and (4) the Interior defendants' Proposed Order [2735] in further clarification of the Court's Order issued September 29, 2004, as clarified by the Court's Order of October 1, 2004 ("defendants' proposed order").

After the Interior defendants filed the first submission, the plaintiffs filed both their motion for reconsideration and a response to the first submission that is "identical in substance" to the plaintiffs' motion for reconsideration. *See* Plaintiffs' Resp. [2649] to Def.'s First Submission in Compliance With May 28, 2004 Order Regarding Historical Statements of Account, at 2. The Interior defendants filed a brief in opposition and a motion to strike the motion for reconsideration; and the plaintiffs filed a reply to the defendants' opposition brief, as well as their own brief in opposition to Interior's motion to strike.

Upon consideration of these filings, oppositions thereto, the reply briefs, the applicable law, and the record herein, the Court finds that the matters at issue here will be resolved in the following way. First, Interior's first submission will be APPROVED IN PART AND DENIED IN PART, and Interior's second submission will be APPROVED, subject to the conditions set forth in this Opinion and the accompanying Order issued this date. Second, the plaintiffs' motion for reconsideration will be DENIED. Third, Interior's motion to strike will be DENIED. Fourth, a modified version of the plaintiffs' and defendants' proposed notices will be APPROVED for inclusion in communications with individual Indians regarding the sale, exchange, transfer, or conversion of Indian

trust land. Fifth, a modified version of the Interior defendants' proposed order will be incorporated into the Order issued this date. The Court's reasoning is set forth below.

## BACKGROUND

The factual background of this case having been set forth at great length in previous Opinions of both this Court and the Court of Appeals, *see, e.g., Cobell v. Norton*, 240 F.3d 1081, 1086–94 (D.C.Cir.2001), the Court will save paper by not restating it here. For these purposes, a more limited history will suffice.

On October 9 and 28, 2002, Interior mailed historical statements of account (*"statements"*) to 1,208 holders of Individual Indian Money Trust ("IIM") accounts. Each *statement* was accompanied by a cover letter containing the following language:

> If you have concerns about the Historical Statement of Account included with this letter or if you believe it is in error, yo[u] may wish to file a challenge with OHTA [the Office of Historical Trust Accounting]. . . . **If you do not challenge the historical account statement or request an extension within 60 calendar days of the postmark on the envelope containing this letter, the enclosed Historical Statement of Account will be final and cannot be appealed**. . . . You may appeal OHTA's final response to the Interior Board of Indian Appeals (IBIA) by filing a Notice of Appeal with IBIA within 30 calendar days of the date you receive OHTA's response. [emphasis in original].

Upon the plaintiffs' motion, this Court examined whether this language attached to the *statements* would adversely affect rights of plaintiff class members who received *statements*. In a Memorandum and Order issued December 23, 2002, the Court found that Interior's "ticking clock" for appealing the account statements effectively extinguished the rights of plaintiff class members to the historical accounting of trust assets to which they are entitled as a result of this litigation. To prevent undue interference with class members' rights, the Court entered an Order pursuant to Federal Rule of Civil Procedure 23(d) restricting communications between In-

terior and class members until the Court approved a notice to be included with future communications. *See Cobell v. Norton*, 212 F.R.D. 14, 20–21 (D.D.C.2002).

On February 7, 2003, Interior filed a motion requesting authority to communicate with class members, seeking leave from this Court to send *statements* to 14,235 IIM account holders. Interior submitted a proposed notice to accompany the *statements*, intended to offset the problems the Court noted concerning the "60 day appeal period" language originally included with such *statements*. The Court granted in part and denied in part Interior's motion. The Court found that while the language of the notice that Interior proposed to send to IIM account holders who are also members of the plaintiff class was adequate to inform class members of their rights in this litigation, Interior's ability to determine which of the proposed account-holder recipients were also class members was suspect. *See* Memorandum and Order, Issued May 28, 2004, at 2–3. Therefore, the Court ordered that Interior could mail the 14,235 historical statements of account, but that Interior had to include the proposed notification with *all statements* mailed. Furthermore, the Court ordered that Interior would have to submit its *statements* as revised to include the specified notice and obtain final approval from the Court both to mail the 14,235 *statements* at issue in the May 28, 2004 Memorandum and Order and for any future mailings of additional *statements* to additional IIM account holders. *See id.* at 5–6. The Court also ordered that supplemental notice regarding this litigation and the rights of class members be sent to the 1,208 IIM account holders who had already received *statements* from Interior, after final approval of the proposed notification by the Court. *Id.* at 6.

In its May 28, 2004 Memorandum and Order, the Court approved the following notice to accompany historical statements of account mailed to IIM holders.

> Please be aware that the account holder for whom this historical statement of account was prepared may be a member of a class action lawsuit, *Cobell v. Norton*, No. 1:96CV01285 (D.D.C.) (Judge Lamberth).

Nothing in this notice should be interpreted as eliminating any rights that the account holder may have if they are a class member in that litigation. If the account holder is a class member and fails to challenge this historical statement of account they do not lose any rights that they have as a class member. For further information you may contact the lawyers for the class members: Dennis M. Gingold, Esq., 607 14th Street, N.W., 9th Floor, Washington, DC 20005, phone: (202) 824–1448, fax: (202) 318–2372, email: dennismgingold@aol.com, or Keith Harper, Esq., Native American Rights Fund, 1712 N Street N.W., Washington, DC 20036–2976, phone: (202) 785–4166, fax: (202) 822–0068, email: harper@narf.org. You may also access further information at the plaintiffs' website, www.indiantrust.com.

The Court found that because Interior could not explain to the Court's satisfaction how it intended to identify which IIM account holders are also class members, this notification must accompany all *statements* mailed to IIM account holders, class member or not.[1] Furthermore, the Court approved the following notice to be sent to those 1,208 IIM account holders who received historical statements of account before the notification issue reached the Court.

Please be aware that many Individual Indian Money account holders are members of a class action lawsuit, *Cobell v. Norton,* No. 1:96CV01285 (D.D.C.) (Judge Lamberth). In October 2002, the above referenced account holder received a Historical Statement of Account, along with a cover letter notifying the account holder of the action they should take if they wanted to challenged the accuracy of that statement. Nothing in that notice should be interpreted as eliminating any rights that the account holder may have if they are a class member in that litigation. If the account holder is a class member and fails to chal-

lenge this historical statement of account they do not lose any rights that they have as a class member. For further information you may contact the lawyers for the class members: Dennis M. Gingold, Esq., 607 14th Street, N.W., 9th Floor, Washington, DC 20005, phone: (202) 824–1448, fax: (202) 318–2372, email: dennismgingold@aol.com, or Keith Harper, Esq., Native American Rights Fund, 1712 N Street N.W., Washington, DC 20036–2976, phone: (202) 785–4166, fax: (202) 822–0068, email: harper@narf.org. You may also access further information at the plaintiffs' website, www.indiantrust.com.

Pursuant to the Court's May 28, 2004 Memorandum and Order, Interior made two submissions requesting authorization to mail out *statements* to IIM account holders. The Interior defendants' first submission, filed June 22, 2004, requested permission to mail *statements* bearing the above recited notice to 17,096 IIM account holders, presumably the 14,235 IIM account holders at issue in the Court's May 28, 2004 Memorandum and Order and 2,861 additional IIM account holders. Interior's first submission further indicated that "[a]n additional 8,435 historical statements of account are expected to be completed by July 6, 2004." The Interior defendants' second submission, filed August 18, 2004, requested permission to send the above-recited notice to the 1,208 IIM account holders who are already in receipt of *statements* from Interior. These two submissions by Interior incited most of the flurry of motions and briefing discussed at the outset of this Opinion.

Additionally, in a matter substantially related to the foregoing, on August 25, 2004 the plaintiffs filed a motion for a preliminary injunction to prevent Interior from communicating with class members in connection with the sale, exchange, transfer, or conversion of Indian trust land in a manner that endangers class members' rights. The Court held a

1. It is important to make clear that the Court continues to take no position on the scope or nature of membership of the plaintiff class. This matter remains a disputed issue in the case, and it not properly before the Court on the present motions. Thus, nothing in this Opinion or the accompanying Order issued this date should be construed as adopting either the plaintiffs' or the Interior defendants' interpretation of the scope of the class certification order. This is the same position the Court took in its May 28, 2004 Memorandum and Order. *See* Memorandum and Order, issued May 28, 2004, at 5.

hearing and found that, like the *statements,* the land-sale related communications did in fact threaten to extinguish rights of plaintiff class members. Therefore, the Court issued an Order on September 29, 2004, again pursuant to Federal Rule of Civil Procedure 23(d), requiring that Interior cease all communications with class members related to the sale, exchange, transfer, or conversion of Indian trust land until such time as the Court approved a notice to accompany all such communications going forward. At the request of the defendants but for no ascertainable reason other than appeasement, the Court issued an Order on October 1, 2004, clarifying that the September 29, 2004 Order indeed applies only to communications between "the defendants, their agents, representatives, employees, officers, and counsel and members of the plaintiff class that are related to the sale, exchange, transfer, or conversion of Indian trust land." Order, issued Oct. 1, 2004 (clarifying the Court's Sept. 29, 2004 Order).[2] The Court further ordered that:

> henceforth, communications between the Interior defendants, their agents, representatives, employees, officers, and counsel and members of the plaintiff class that are related to the sale, exchange, transfer, or conversion of Indian trust land may proceed only if a Court-approved version of the above-described notice is conspicuously displayed on such communications and then only between the Interior defendants, their agents, representatives, officers, and counsel and plaintiffs' counsel unless the class member with whom communication is sought has waived his or her right to consult class counsel, in which case communication may proceed between the Interior defendants, their agents, representatives, employees, officers, and counsel and the individual class member.

Order issued Oct. 1, 2004 (clarifying Order issued Sept. 29, 2004).

Pursuant to these Orders, the parties submitted their respective proposals for the form of notice to accompany communications between Interior and class members related to the sale, exchange, transfer, or conversion of Indian trust land. Subsequently, Interior demonstrated on several occasions that it was unable to properly implement the Court's Order.

It came to the Court's attention that, initially, Interior felt that compliance with the September 29, 2004 Order required Interior to shut down the Bureau of Indian Affairs entirely. Field offices were closed and notices were affixed to their doors explaining that no business could be conducted due to this Court's Order of September 29, 2004; and apparently all live telephone operators were replaced with a recorded message of the same stripe. Most appallingly, the entire process by which payments are made to IIM account holders from lease revenues, royalties, and so forth was similarly shut down. These actions, of course, were taken pursuant to a deliberate, infantile, and frankly ridiculous misinterpretation of this Court's straightforward Order.

Although the Secretary claims that she orally ordered that no payments to Indians be withheld, her initial written instructions to Interior employees were silent on the issue. Further, the tenor of the Secretary's instructions apparently led many employees to hold payments and, in numerous cases, to tell the Indian beneficiaries that their checks were being withheld as a direct result of this Court's Order. As the Court forcefully explained to the Secretary's counsel at a hearing held by the Court on October 1, 2004, such statements were lies. The Secretary's *addition,* in her instructions promulgated to Interior on September 30, 2004, of items 2 through 8 on the list of subjects of *communication* between Interior and *Indians* restricted by this Court's Order,[3] *before* seeking any

---

**2.** That the initial September 29, 2004 Order was clearly so limited is not in doubt, and thus the October 1 clarification Order was issued in the name of redundancy. The Court has found that such redundancy is often required to ensure both comprehension of and compliance with Orders issued in this case.

**3.** The Secretary's September 30, 2004 instructions to Interior employees indicated that the Secretary believed the Court's September 29, 2004 Order to restrict all communications between Interior and class members regarding: "encumbrances, leasing, lease sales, permitting, rights-of-way, and timber sales of or on individu-

clarification from the Court, is yet another example of how the Secretary treats these Indian beneficiaries—one so far beyond the pale that it led the Court to inquire of defense counsel whether the Secretary had "decided to declare war on the Indians that brought this case[.]" Tr. at 9 (Hearing of Oct. 1, 2004).

The Secretary's claim that she was unsure what the Court intended in its September 29, 2004 Order is now, as it was then, totally bogus. What is clear is that the Secretary, in a fit of pique and perhaps anger at both the Court and the plaintiffs for the issuance of the September 29 Order, simply retaliated against the Indian beneficiaries under the thin disguise of a preposterous and facially false "interpretation" of the Court's Order. That this "interpretation" was not crafted in good faith is clear, but the Secretary's motive for her bad faith interpretation and retaliation passes understanding.

The plaintiffs requested several emergency hearings in response to Interior's actions, at which little was resolved. Finally, at a status conference held by the Court on October 19, 2004, the Court instructed Interior to submit a proposed Order in further clarification of the Court's September 29, 2004 Order as clarified by the Court's October 1, 2004 Order. The Court hopes that this further clarification will eliminate any remaining avenues for misinterpretation of this Court's Orders by Interior and stymie further inappropriate conduct that might be undertaken as a result.

## DISCUSSION

### A. The Plaintiffs' Motion for Reconsideration

As there seems to be significant confusion with respect to the proper legal standard governing the present motion for reconsideration, the Court will first carefully explain the applicable law.

### 1. Legal Standard

■ The Court's May 28, 2004 Memorandum and Order at issue here is clearly interlocutory in nature—it merely carried out the conditions of the Court's December 23, 2002 Memorandum and Order restricting communication between Interior and members of the plaintiff class and did not purport to dispose of any aspect of this litigation on the merits. Therefore, Federal Rule of Civil Procedure 54(b), rather than Rule 60(b), must provide the relevant standard for reconsidering the Court's May 28, 2004 Memorandum and Order. *See* Fed. R. Civ. P. 60(b) ("On Motion . . . the court may relieve a party or a party's legal representative from a *final* judgment, order, or proceeding . . . .") (emphasis added); *see also* FED. R. CIV. P. 59(e) (authorizing motions to reconsider final judgments); *Dellums v. Powell*, 566 F.2d 231, 234 (D.C.Cir.1977) ("Rule 60(b) applies only to modifications of final judgments."). The standard governing reconsideration under Rules 59(e) and 60(b) requires a court to find "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *APCC Servs., Inc. v. AT & T Corp.*, 281 F.Supp.2d 41, 44 (D.D.C.2003) (quoting *Campbell*, 231 F.Supp.2d at 7).

Rule 54(b) governs reconsideration of orders that do not constitute final judgments in a case. *See Campbell v. United States Dep't of Justice*, 231 F.Supp.2d 1, 6 n. 8 (D.D.C. 2002) (Rule 54(b) "addresses interlocutory judgments"); *Moore v. Hartman*, 332

---

ally-owned Indian trust land;" "the investment of trust funds in IIM accounts;" "estate planning, will drafting and the probate of or relating to Indian trust assets;" "the surveying or appraisal of trust assets;" "title to trust lands;" "ownership of trust funds or lands;" or "physical improvement or alteration of trust assets." These subjects, listed as items 2 through 8 in the Secretary's September 30 instructions, were interpreted to fall within the ambit of the Court's September 29, 2004 Order restricting "communications between the defendants, their agents, representatives, employees, officials, or counsel and members of the plaintiff class regarding the sale, exchange, transfer, or conversion of Indian trust land." The Court remains at a loss to understand how such an *obviously conceptually* bankrupt interpretation of a clearly worded Order could have been swallowed by so many Interior employees without objection. However, this list leaves little doubt why those employees had little choice but to simply shut down the Bureau of Indian Affairs—any words they might have exchanged with any Indian who walked through the door would have violated the Secretary's instructions.

F.Supp.2d 252, 256–57 (D.D.C.2004) (explaining that Rule 54(b) governs the disposition of requests for reconsideration of interlocutory orders); *APCC Servs.*, 281 F.Supp.2d at 44 (same). Rule 54(b) provides, in relevant part, that:

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

FED. R. CIV. P. 54(b).

Importantly, the standard for reconsideration of interlocutory orders under Rule 54(b) is distinct from the standard applicable to motions for reconsideration of final judgments. The precise standard governing Rule 54(b) reconsideration is unsettled in our Circuit, but it is clear that "courts have more flexibility in applying Rule 54(b)" than in determining whether reconsideration is appropriate under Rules 59(e) and 60(b). *Moore*, 332 F.Supp.2d at 256. For example, our Court has held that Rule 54(b) reconsideration may be granted "as justice requires." *APCC Servs.*, 281 F.Supp.2d at 44; *Campbell*, 231 F.Supp.2d at 7 (quoting *Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C.2000)); *M.K. v. Tenet*, 196 F.Supp.2d 8, 12 (D.D.C. 2001).

Other courts apply a variety of different standards when confronted with a motion for reconsideration under Rule 54(b). *See generally Moore*, 332 F.Supp.2d at 257 n. 7 (surveying various standards); *Motorola, Inc. v.*

*J.B. Rodgers Mechanical Contractors, Inc.,* 215 F.R.D. 581 (D.Ariz.2003) (same); *see, e.g., Gallant v. Telebrands Corp.,* 35 F.Supp.2d 378, 394 (D.N.J.1998) (predicating Rule 54(b) reconsideration on whether "the parties proffer 'supplemental evidence or new legal theories'") (quoting *United States ex rel. Haskins v. Omega Institute, Inc.,* 25 F.Supp.2d 510, 512 (D.N.J.1998)); *Neal v. Honeywell,* 1996 WL 627616, at *2 (N.D.Ill. 1996) (noting that Rule 54(b) motions for reconsideration are "best characterized as a common law motion for reconsideration" to be granted where the court "has patently misunderstood a party," "has made a decision outside the adversarial issues presented to the Court by the parties," "has made an error not of reasoning but of apprehension," or where "a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court") (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990)).

Each of these standards leaves within the ambit of the Rule 54(b) reconsideration inquiry a good deal of space for the Court's discretion. This Court will adhere to the "as justice requires" standard for determining whether to grant reconsideration of an interlocutory order under Rule 54(b) because our Court has applied it previously. There does not seem to be any real distinction, however, between this approach and the others listed above, insofar as asking "what justice requires" amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances.[4]

---

4. This standard is fully distinct from the legal standard governing relief under Federal Rule of Civil Procedure 23(d). As this Court has indicated on prior occasions, a showing that conduct of one of the parties to a class action lawsuit presents a "likelihood of serious abuses" or "interfere[s] with" plaintiff class members' rights may warrant action by this Court to prevent such abuses from continuing. *See Cobell v. Norton,* 212 F.R.D. 14, 19 (D.D.C.2002) (quoting *In re School Asbestos Litig.,* 842 F.2d 671, 683 (3d Cir.1988)). This is the standard for seeking a restrictive order pursuant to Rule 23(b), but is irrelevant to the Rule 54(b) reconsideration inquiry and is not at issue here as neither party has requested relief under Rule 23(d). This observation is contrary to what seems to be the one point

of agreement between the parties in this matter, namely that the "interference with class rights" and "likelihood of abuses" standard should govern the disposition of the plaintiffs' motion for reconsideration. *See* Pl.'s Mot. for Reconsid. at 21; Def.'s Opp. at 4. Although certain kinds of conduct by a party or parties might justify relief under both the "as justice requires" standard set forth here for the Rule 54(b) inquiry and under the Rule 23(b) test, that is a matter of coincidence that in no way justifies muddying already opaque legal waters in this case by conflating two fully distinct questions of law. However, it should be noted that if the standards for relief under Rules 54(b) and 23(d) *were* identical, then the plaintiffs' motion for reconsideration would be moot, as this Court has already granted what

This Court has previously noted that a District Court retains "broad discretion to grant or deny a motion for reconsideration." *Cobell v. Norton*, 226 F.Supp.2d 175, 177 (D.D.C.2002) (citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233–34, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995)). This Court will only grant the plaintiffs' motion, then, if it finds, in its discretion, that "justice [so] requires."

*2. Plaintiffs' Arguments for Reconsideration*

The plaintiffs' lengthy motion for reconsideration lodges what amounts to a single argument. First, the plaintiffs allege that there are serious technical defects in the historical statements of account to be mailed to IIM account holders, and thus quite likely to at least some class members, pursuant to authority granted by this Court in the May 28, 2004 Memorandum and Order. These defects, the plaintiffs explain at length, exist due to either: (1) Interior's negligence; (2) Interior's general disorganization and lack of infrastructure; (3) Interior's ineptitude; (4) Interior's intentional misconduct; or (5) some combination of these factors. *See, e.g.*, Pl.'s Mot. for Reconsid. at 8–12, 15–19. Second, the plaintiffs argue that, due to the defects in Interior's general infrastructure and trust accounting practices, the *statements* at issue must, in virtue of their source, be "false and materially misleading." *See, e.g.*, Pl.'s Mot. for Reconsid. at 2, 19–21.

The plaintiffs conclude that because the *statements* are necessarily deficient, and therefore "false and materially misleading," mailing them to IIM account holders will "interfere with the rights of Individual Indian trust beneficiaries," some or all of whom are members of the plaintiff class. *See, e.g.*, Pl.'s Mot. for Reconsid. at 21–24. That is, "such statements sow confusion and undermine the vested property rights of [class members] to a complete and accurate accounting" because Interior "will surely attempt to exclude such beneficiaries from this class of plaintiffs by arguing that an 'accounting' has already been rendered." Pl.'s Mot.

for Reconsid. at 22. Moreover, plaintiffs insist that mailing these *statements* to IIM account holders allows the *statements* to "bypass judicial review ... completely," Pl.'s Mot. for Reconsid. at 23, undercutting this Court's intention that Phase II of this litigation consist of a "trial regarding defendants' rendition of an accounting." Pl.'s Mot. for Reconsid. at 22. Finally, plaintiffs argue that the *statements*, due to their flaws, are "largely ... unintelligible and valueless;" Pl.'s Mot. for Reconsid. at 14; and that the *statements* will have to be "reopened and re-reconciled and, when the errors and omissions are identified, every 're-accounting' will be required to be re-reviewed by this Court and plaintiffs. [This would be a] daunting, duplicative, and wasteful ... use of both the Court's and plaintiffs' limited resources ...." Pl.'s Mot. for Reconsid. at 12 n. 14.

Put summarily, the plaintiffs' motion presents the argument that: (1) Interior's accounting procedures are, for one reason or another, flawed; (2) flawed accounting procedures necessarily produce flawed accountings; (3) flawed accountings will interfere with class members' rights for various reasons; therefore (4) Interior's production and distribution of the *statements* will necessarily interfere with class members' rights. The relevant question, then, is whether justice requires that the Court resolve the issue of the adequacy of Interior's accounting procedures now, on the present motions and evidence; or alternatively that the Court suspend the mailing of any further *statements* until such time as the issue of the adequacy of Interior's accounting practices is resolved. The Court finds that considerations of justice mandate neither of these dispositions.

First, and perhaps most importantly, the Court has already made clear that "the second phase of this case will involve a trial regarding [Interior's] rendition of an accounting." *Cobell v. Babbitt*, 91 F.Supp.2d 1, 31 (D.D.C.1999). All issues related to the adequacy of Interior's accounting practices, then, may be raised by the plaintiffs and will be taken up at the Phase II trial. The present motions do not place this issue be-

*statements* in its December 23, 2002 Memorandum and Order.

fore the Court at this time, and the Court will not attempt to delve into the myriad detailed questions of fact involved in determining whether Interior's accounting practices are presently sufficient (or perhaps, more appropriately, to what extent they are presently insufficient) to satisfy its fiduciary duties. To make such a determination without a full evidentiary record before the Court cannot be what justice requires. To the contrary, a hasty and under-informed resolution of these issues could not but disserve justice and harm all those involved in this litigation.

Perhaps, then, justice requires that the Court suspend the distribution of the *statements* until such time as Interior's accounting procedures are fully evaluated by the Court. However, this Court has already considered the arguments for and against suspending the distribution of the *statements*. That deliberation resulted in the issuance of the May 28, 2004 Memorandum and Order, in which this Court explained that, despite the plaintiffs' protests, it was "inclined to allow the historical statements of account to be mailed to the IIM account holders *along with a notice* that includes specific language informing those account holders of this litigation." Memorandum and Order, issued May 28, 2004, at 2 (emphasis added). The Court rendered that decision after taking into account the problems that plague Interior's trust accounting infrastructure, which the Court previously addressed at great length in the discussion accompanying its 2003 structural injunction. *See generally Cobell v. Norton*, 283 F.Supp.2d 66 (D.D.C.2003). This Court is not unmindful that there are serious flaws in Interior's accounting practices and management of the trust. However, the Court has also decided that a modified version of the notice specified in the May 28, 2004 Memorandum and Order, and specified below, is sufficient to insulate class members from any harm that might flow from Interior's accounting difficulties.

Even if all of the plaintiffs' allegations concerning the problems that inhere in Interior's production of the *statements* are true— that is, even if the *statements*, due to faults in their creation, truly are "false and materi-

ally misleading"—the notification that must accompany them according to this Court's mandate prevents class members from actually *being misled.* So long as class members are appraised of the pendency of this litigation and of their right to consult with class counsel regarding the *statements,* there is little appreciable risk of harm. In other words, until the plaintiffs make a persuasive argument that the Court's prior resolution of these issues in the form of the notice requirement is inadequate to satisfy the demands of justice, there is no basis for reconsideration of the Court's May 28, 2004 Memorandum and Order even if the *statements* themselves prove to be false and misleading.

Finally, the Court has already considered whether the *statements* threaten to interfere with class members' rights to an adequate historical accounting as specified in the first phase of this litigation. Again, this matter was before the Court in late 2002 upon the plaintiffs' request for Rule 23(d) relief with respect to these statements of account. *See generally Cobell,* 212 F.R.D. 14. The Court acknowledged that the *statements, as they were being mailed prior to this Court's Memorandum and Order of December 23, 2002,* did indeed threaten to interfere with the rights of class members. It was on the basis of that showing by the plaintiffs that the Court granted relief in the December 23, 2002 Memorandum and Order.

The Court's Memorandum and Order issued May 28, 2004 similarly took into consideration the potential that the *statements* will interfere with class members' rights in this case. Whether or not conduct threatens interference with rights of the plaintiff class is, after all, the test for the sort of Rule 23(d) relief that the Court granted in its December 23, 2002 Memorandum and Order, pursuant to which the May 28, 2004 Memorandum and Order was issued. *See Cobell,* 212 F.R.D. at 19; Memorandum and Order, issued May 28, 2004, at 1. To prevent such interference, the Court mandated that Interior include a notice of this litigation and of class members' rights to consult with class counsel with the *statements* it sought permission to mail to IIM account holders. This notice was designed to deal with the same risks of harm

that the plaintiffs raised before the issuance of both the December 23, 2002 Order and the May 28, 2004 Order; and that plaintiffs' seek to litigate yet again in their present motion for reconsideration.

Then, as now, the plaintiffs argued that Interior would use the distribution of the *statements* to extinguish class members' right to an accounting by later contending that recipient IIM account holders are not members of the plaintiff class *precisely because* they have received historical statements of account. In response to this concern, the Court in December 2002 found that the *statements,* with the original "ticking clock" language discussed above, did "purpor[t] to extinguish the rights of individual class members to a full and accurate accounting unless the members object within sixty days." *Cobell,* 212 F.R.D. at 19. To remedy this interference, the Court required that all *statements* mailed to IIM account holders, as well as all notices mailed to IIM account holders already in receipt of *statements,* also contain the admonition that "[n]othing in this notice should be interpreted as eliminating any rights that the account holder may have if they are a class member in [the *Cobell* ] litigation. If the account holder is a class member and fails to challenge this historical statement of account they do not lose any rights that they have as a class member." This is not empty or ineffectual language. To the contrary—it denotes the Court's conclusion that the *statements* not only should not, but in fact *cannot and will not* adversely affect the rights of members of the plaintiff class.

Additionally, the notices must include information to assist recipients in contacting plaintiffs' counsel. As Interior itself concedes, "[p]laintiffs' counsel will receive copies of all historical statements of account provided to IIM account holders, and are free to contact recipients who are class members with whatever additional information they may wish to provide." Def.'s Opp. at 8. In fact, plaintiffs' counsel could forward a copy of their motion for reconsideration to every recipient of one of Interior's historical statements of account in order to inform the recipient of the problems allegedly plaguing Interior's accounting procedures. Thus, there seems to be no danger that class members will remain uninformed about the plaintiffs' arguments related to both the process by which the historical statements of account are generated and the nature of class membership.

Finally, there simply is no danger that receipt of a historical statement of account will somehow "cut" IIM account holders out of the plaintiff class if they are determined to be proper class members. As the scope of the plaintiff class and the nature of membership in it are issues yet to be resolved by the Court, the question whether receipt of an accounting statement from Interior excludes a person from the plaintiff class is not even properly presented here. However, that being said, it seems incredibly counterintuitive to think that this Court, aware as it is of the problems associated with Interior's management of the trust and accounting processes, would be so easily hoodwinked by such a juvenile semantic trick as plaintiffs claim Interior will almost certainly pull after the *statements* are distributed. *See* Pl.'s Mot. for Reconsid. at 22 (Interior "will surely attempt to exclude such beneficiaries from this class of plaintiffs by arguing that an 'accounting' has already been rendered."). Once the issue of the adequacy of Interior's trust accounting practices is tried on the merits, there can be no doubt that if the plaintiffs sufficiently prove that the *statements* at issue here are inaccurate, fraudulent, or otherwise defective, then the Court will not neglect that proof and exclude IIM account holders in receipt of these *statements* from the benefit of any and all relief granted to the class.

Absent some argument or piece of evidence indicating that (1) the notice approved by this Court is insufficient to protect the rights of class members; or (2) the *statements* at issue here are so different from those approved for distribution by the Court's May 28, 2004 Memorandum and Order that the reasoning of that Order simply does not apply to the *statements* before the Court today; the Court's finding that including the above-recited notice with all *statements* mailed to IIM account holders satis-

fies the requirements of justice will not be reexamined here.[5]

The plaintiffs present no such argument or evidence, and so their motion for reconsideration cannot support relief under Rule 54(b). As the Second Circuit noted, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d 944, 953 (2d Cir.1964). For the reasons set forth above, the plaintiffs' motion for reconsideration will be denied.

**B. The Defendants' First and Second Submissions in Compliance with the Court's May 28, 2004 Memorandum and Order**

 Initially, it is important to note that, when acting pursuant to Federal Rule of Civil Procedure 23(d), this Court "has the duty and authority to restrict communications that interfere with the proper administration of a class action and to restrict conduct that abuses the rights of members of the class." *Cobell v. Norton,* 212 F.R.D. 14, 19 (D.D.C.2002) (quoting *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.,* 1985 WL 25746 at *5 (D.D.C.1985)); *see also* Memorandum and Opinion issued Sept. 29, 2004, at 12–13, 18–19. In accordance with this duty and authority, the Court has requested that the parties submit proposed notices to accompany both the *statements* and communications between defendants and class members regarding the sale, exchange, transfer, or conversion of Indian trust land. However, as the duty to monitor communications with class members and to safeguard the rights of the class falls squarely on the Court, the Court is not and cannot be bound to accept one or the other of the parties' proposals when determining how best to regulate communications with the class. Thus, the Court is free to take from those proposals, and to modify them, as it sees fit in accordance with the Court's determination of what is in the best interests of the class members. Thus

the Court has determined that modified forms of all the notices at issue here will be approved to accompany both the *statements* and communications between the defendants and class members regarding the sale, exchange, transfer, or conversion of Indian trust land. Furthermore, on this same basis, the Court has determined that the defendants' proposed order should issue in a modified form. The exact text of each modified notice is set out both here and in the accompanying Order issued this date, for the sake of absolute clarity.

With respect to the *statements,* the plaintiffs' only opposition to Interior's first and second submissions is the motion for reconsideration that will be denied for the reasons set forth above. Thus, there is no viable argument to persuade the Court not to grant Interior's requests to send out the *statements* that are the subject of the first and second submissions. These *statements* must, however, be accompanied by the modified notices set out below. The Court will grant Interior's requests to send out: (1) 17,096 historical statements of account, per the first submission; and (2) 1,208 notices to the IIM account holders who received historical statements of account prior to the issuance of the Court's May 28, 2004 Memorandum and Order. This authorization is granted provided that Interior complies with each and every condition set forth in the May 28, 2004 Memorandum and Order, which conditions are hereby incorporated herein, with the *sole qualification* that each and every one of the 17,096 *statements* herein approved for distribution must contain *the following notice* rather than the notice set forth in the Court's May 28, 2004 Memorandum and Order:

> Please be aware that the Individual Indian Money ("IIM") account holder for whom the historical statement of account to which this notice is attached was prepared may be a member of a class action lawsuit, *Cobell v. Norton,* No. 1:96CVo1285 (D.D.C.) (Judge Lamberth). Nothing in this notice, the attached historical statement of account, or any letter,

---

**5.** The Court today modifies the notice approved in the Court's May 28, 2004 Memorandum and Order solely for the sake of clarity, and not to

correct any substantive inadequacies in the previously approved notice wording.

document, or other communication to which this notice may be attached will eliminate or adversely affect any rights that the IIM account holder for whom the attached historical statement of account was prepared may have if he or she is a class member in the *Cobell* litigation. The IIM account holder for whom the attached historical statement of account was prepared will not eliminate or adversely affect any rights that he or she may have as a class member by failing to challenge the attached historical statement of account.

As a potential class member, the IIM account holder for whom the attached historical statement of account was prepared has the right to consult with the class counsel in the *Cobell* litigation about this historical statement of account or any other matter. For further information you may contact the lawyers for the class members: Dennis M. Gingold, Esq., 607 14th Street, N.W., 9th Floor, Washington, DC 20005, phone: (202) 824–1448, fax: (202) 318–2372, email: dennismgingold@aol.com, or Keith Harper, Esq., Native American Rights Fund, 1712 N Street N.W., Washington, DC 20036–2976, phone: (202) 785–4166, fax: (202) 822–0068, email: harper@narf.org. You may also access further information at the plaintiffs' website, www.indian-trust.com.

Additionally, each and every one of the 1,208 notices to be sent to IIM account holders who received *statements* prior to the issuance of the Court's May 28, 2004 Memorandum and Order must comply with every requirement of the May 28, 2004 Memorandum and Order with the *sole qualification* that all 1,208 notices herein approved for distribution must contain *the following notice* rather than the notice set forth in the Court's May 28, 2004 Memorandum and Order:

Please be aware that many Individual Indian Money ("IIM") account holders are members of a class action lawsuit, *Cobell v. Norton*, No. 1:96CV01285 (D.D.C.) (Judge Lamberth). In October 2002 the above-referenced IIM account holder received a historical statement of account, along with a cover letter notifying the account holder of the action they should take if they wanted to challenge the accuracy of that statement. Nothing in this notice, the notice, historical statement of account and other documents the above-referenced IIM account holder received in October 2002, or any other letter, document, or communication to which this notice may be attached will eliminate or adversely affect any rights that the above-referenced IIM account holder may have if he or she is a class member in the *Cobell* litigation. The above-referenced IIM account holder will not eliminate or adversely affect any rights that he or she may have as a class member by failing to challenge the historical statement of account he or she received in October 2002.

As a potential class member, the above-referenced IIM account holder has the right to consult with the class counsel in the *Cobell* litigation about the historical statement of account he or she received in October 2002 or any other matter. For further information you may contact the lawyers for the class members: Dennis M. Gingold, Esq., 607 14th Street, N.W., 9th Floor, Washington, DC 20005, phone: (202) 824–1448, fax: (202) 318–2372, email: dennismgingold@aol.com, or Keith Harper, Esq., Native American Rights Fund, 1712 N Street N.W., Washington, DC 20036–2976, phone: (202) 785–4166, fax: (202) 822–0068, email: harper@narf.org.

Furthermore, the Court will continue in effect the requirement that any future mailings of historical statements of account to IIM account holders must be approved by this Court, as required by the May 28, 2004 Memorandum and Order. For the sake of absolute clarity, the requirement with respect to future mailings of historical statements of account set forth in the May 28, 2004 Order and continued in effect here is as follows. "Any and all subsequent mailings of historical statements of account to IIM account holders above the [14,235 authorized by the May 28, 2004 Order and the additional 2,861 authorized herein pursuant to Interior's first submission] shall be submitted to the Court prior to being mailed and include the three elements set forth above for this first

group of 14,235 account holders." Memorandum and Order, issued May 28, 2004, at 4.

Future submissions in compliance with the Court's May 28, 2004 Memorandum and Order, this Opinion and the accompanying Order issued this date must contain: "(1) a sample of the actual letter to be mailed with the [approved notification language as modified herein] inserted; (2) a sample of one of the historical statements of account; and (3) the exact number of historical statements of account and transmittal letters it plans to send out." *Id.* Plaintiffs may, again, file brief comments or substitute language with the Court within 5 days of any submission by Interior seeking authorization to mail further *statements*. This section of the Opinion has restated the central requirements of the May 28, 2004 Memorandum and Order, which remain in effect. Nothing in this Memorandum Opinion or the accompanying Order alters the May 28, 2004 Memorandum and Order or its requirements in any way, except for the minor modifications to the language of the notices approved for distribution with the *statements* set out above. Therefore, Interior must continue to comply with the May 28, 2004 Memorandum and Order as issued with the sole qualification that all statements must be accompanied by notice as modified in this Opinion.

Finally, the Court does not approve the mailing of the "additional 8,435 historical statements of account ... expected to be completed by July 6, 2004." As was made clear in the Court's May 28, 2004 Order, Interior must, in any submission seeking authorization to mail *statements* to IIM account holders, specify "the exact number of historical statements of account and transmittal letters it plans to send out." The assertion that 8,435 additional *statements* are "expected to be completed" is not sufficiently concrete to satisfy this requirement. When Interior has actually prepared the additional *statements*, and can tell the Court exactly how many have been completed for mailing, the Interior may make another submission according to the requirements set forth in the Court's May 28, 2004 Memorandum and Order and seek the Court's approval to mail the additional *statements*. Plaintiffs, of course, retain the right to comment or suggest alterations to the language of such future submissions.

**C. The Parties' Proposed Notices to Class Members to Accompany Communications Regarding the Sale, Transfer, Exchange, or Conversion of Indian Trust Land; The Defendants' Proposed Order Clarifying this Court's September 29, 2004 Order**

Pursuant to the Court's Order of September 29, 2004, as clarified by the Court's Order of October 1, 2004, both parties have submitted proposed notices to accompany all future communications between the defendants, their agents, representatives, employees, officers, and counsel and members of the plaintiff class regarding the sale, exchange, transfer, or conversion of Indian trust land. The plaintiffs' proposed notice reads as follows.

The *Cobell v. Norton* litigation was filed by Elouise Cobell and other named plaintiffs on June 10, 1996, in the U.S. District Court for the District of Columbia on behalf of all current and past beneficiaries of the Individual Indian Money ("IIM") Trust ("*Cobell* Class"). This law suit is an action in equity to enforce the trust duties that the United States government owes to the *Cobell* Class. Named as defendants are the Interior Secretary, the Assistant Interior Secretary–Indian Affairs, and the Secretary of the Treasury who, in their official capacities, are trustee-delegates for the government in the management and administration of the IIM Trust ("Trustee–Delegates"). The Trustee–Delegates have been held in breach of fiduciary duties that the United States government owes to the *Cobell* Class. As a result, the Trustee–Delegates have been ordered to provide the *Cobell* Class an accounting of their conduct and an accounting of all items of the IIM Trust since its inception. They also have been ordered to discharge their trust duties in accordance with all applicable statutory, treaty, and common law.

A future trial is necessary, but is not yet scheduled, for the Court to assess the adequacy of the Trustee–Delegates' account-

ing. Until such time as the Court has judged an accounting to be adequate and it has found that the Trustee–Delegates are discharging their trust duties prudently and in accordance with law, the Court in *Cobell v. Norton* has determined that it is essential to ensure that communications by and between the government and the *Cobell* Class do not interfere with the class members' right to an accurate and complete accounting or otherwise adversely affect their rights in this litigation.

In that regard, the Court has held that each member of the *Cobell* Class has a right to an accurate and complete accounting, a current appraisal of the fair market value of Trust land, and other relevant information regarding his or her trust assets prior to making any decision to sell, transfer, exchange or convert any trust land. Each class member also has the right to consult with class counsel prior to making a decision to sell, transfer, exchange, or convert his or her trust assets. For further information you may contact the lawyers for the class members: Dennis M. Gingold, Esq., 607 14th Street, N.W., 9th Floor, Washington, DC 20005, phone: (202) 824–1448, fax: (202) 318–2372, email: dennismgingold@aol.com, or Keith Harper, Esq., Native American Rights Fund, 1712 N Street N.W., Washington, DC 20036–2976, phone: (202) 785–4166, fax: (202) 822–0068, email: harper@narf.org. You may also access further information at the plaintiffs' website, www.indiantrust.com.

The Court has confirmed that each class member may sell his or her trust land—without affecting his or her rights in this litigation—prior to the receipt of an appraisal and other relevant information so long as this right to receive this information prior to any sale is knowingly and expressly waived. Therefore, if you want to sell, transfer, exchange or convert your Trust land prior to your receipt of this information, you may do so. An affidavit waiving your right to such information prior to the sale of Trust land may be downloaded from www.indiantrust.com or obtained from the Native American Rights Fund by calling (202) 785–4166.

The defendants' proposed notice, by contrast, reads as follows.

This notice **only concerns** communications from the Department of the Interior regarding any transaction involving or resulting in **the sale, exchange, transfer, or conversion of your Indian trust land.** This notice is being provided in accordance with an Order in the class action lawsuit, *Cobell v. Norton,* No. 1:196CV01285 (D.D.C.).

Please be aware that many Individual Indian Money ("IIM") account holders are class members in the *Cobell* litigation, which involves Interior's obligation to perform an accounting for IIM account holders and may involve other issues that are disputed. If you are a class member, you may consult with class counsel in the *Cobell* litigation before proceeding with any transaction involving or resulting in the sale, exchange, transfer, or conversion of your Indian trust land. For further information you may contact the lawyers for the class members: Dennis M. Gingold, Esq., 607 14th Street, N.W., 9th Floor, Washington, DC 20005, phone: (202) 824–1448, fax: (202) 318–2372, email: dennismgingold@aol.com, or Keith Harper, Esq., Native American Rights Fund, 1712 N Street N.W., Washington, DC 20036–2976, phone: (202) 785–4166, fax: (202) 822–0068, email: harper@narf.org. You may also access further information at the plaintiffs' website, www.indiantrust.com.

Although you may consult with class counsel in the *Cobell* litigation, you are not required to do so and may choose to waive consultation. However, in accordance with an Order in the *Cobell* litigation, no employee, official, representative, or agent of the Department of the Interior may communicate further with you regarding the sale, exchange, transfer, or conversion of Indian trust land until you indicate in writing that you have either: (1) consulted with class counsel or (2) you have waived consultation.

Please be aware that any decision you make regarding the sale, exchange, transfer, or conversion of your Indian trust land will NOT eliminate ANY rights that you

may have if you are a class member in the *Cobell* litigation. Also, whether you consult with class counsel, or choose to waive consultation, you will NOT lose ANY rights that you may have as a class member in the *Cobell* litigation.

Within ten (10) days of receiving this notice please check the appropriate box below and return this form to the Department of the Interior office from which you obtained this notice. Please have one of the *Cobell* lawyers listed above sign the document after you have indicated your preference. If you need assistance in providing the form to the *Cobell* lawyers for their signature, a Department of the Interior employee at your local Bureau of Indian Affairs office will fax your signed form to one of the *Cobell* lawyers.

_____ I have consulted with class counsel in the *Cobell* litigation and wish to proceed with any sale, exchange, transfer, or conversion of my Indian trust land.

_____ I hereby waive my opportunity to consult with class counsel in the *Cobell* litigation and wish to proceed with any sale, exchange, transfer, or conversion of my Indian trust land. [emphasis in original]

Of course, both of these proposed notices provide far more information, and are thus far longer, than is required. Furthermore, as Interior correctly noted at oral argument, several of the assertions in the plaintiffs' proposed notice are disputed matters currently pending before the Court of Appeals. To be sure, class members must be notified of the existence of this litigation, of their potential class membership, and of their right to consult with class counsel prior to engaging in any transaction or communication with Interior related to the sale, exchange, transfer, or conversion of trust land. Additionally, the Court finds that class members must be advised that no such communications or transactions, regardless of nature or result, can diminish or otherwise adversely affect their rights as class members in this litigation.

However, the Court is confident in the ability of plaintiffs' counsel to provide all who inquire with additional information related to the details of this litigation; as well as with a full description of the rights of class members. These details, then, need not be included in the notice that is to accompany communications between the defendants, their agents, representatives, employees, officials, or counsel and class members regarding the sale, exchange, transfer, or conversion of Indian trust land. Neither is it necessary to force the Indian who receives the notice to obtain a signature from plaintiffs' counsel; or to require the Indian to return a signed form in the event that he or she consults with class counsel and decides to proceed with the transaction. A signed form is only needed to document cases where the right to consult with plaintiffs' counsel is waived; and Interior, rather than the Indian in receipt of the notice, will be required to provide copies of all returned waiver forms to plaintiffs' counsel.

In light of the foregoing discussion, and pursuant to its duty and authority under Federal Rule of Civil Procedure 23(d), the Court approves the following notice which shall be included with all communications between the defendants, their agents, representatives, employees, officials, or counsel and class members regarding the sale, exchange, transfer, or conversion of Indian trust land.

Please be aware that the Indian trust land owner to whom the communications or documents to which this notice is attached were directed may be a member of a class action lawsuit, *Cobell v. Norton*, No. 1:96CVo1285 (D.D.C.) (Judge Lamberth). Nothing in this notice or any letter, document, or other communication to which this notice may be attached will eliminate or adversely affect any rights that the Indian trust land owner who received this notice may have if he or she is a class member in the *Cobell* litigation. The Indian trust land owner who received this notice will not eliminate or adversely affect any rights that he or she may have as a class member by entering into any transaction or communication with any other person or organization, including the Department of the Interior or the Bureau of Indian Affairs, related to the sale, ex-

change, transfer, or conversion of Indian trust land.

As a potential class member, the Indian trust land owner who received this notice has the right to consult with the class counsel in the *Cobell* litigation prior to any proceeding with any further communication or transaction. For further information you may contact the lawyers for the class members: Dennis M. Gingold, Esq., 607 14th Street, N.W., 9th Floor, Washington, DC 20005, phone: (202) 824-1448, fax: (202) 318-2372, email: dennismgingold@aol.com, or Keith Harper, Esq., Native American Rights Fund, 1712 N Street N.W., Washington, DC 20036-2976, phone: (202) 785-4166, fax: (202) 822-0068, email: harper@narf.org. You may also access further information at the plaintiffs' website, www.indiantrust.com. The Indian trust land owner who received this notice may also choose to waive his or her right to consult with class counsel. If the Indian trust land owner who received this notice wishes to do so, he or she must mark the blank below, sign, and return this notice to the Bureau of Indian Affairs office from which you received it within ten (10) days. Waiver of the right to consult with class counsel will not eliminate or adversely affect any rights that the Indian trust land owner who received this notice may have as a class member in the *Cobell* litigation.

_____ I, the undersigned, hereby waive my right to consult with class counsel in the Cobell litigation before continuing with communications or transactions involving or resulting in the sale, exchange, transfer, or conversion of Indian trust land.

With respect to the defendants' proposed order clarifying this Court's Order issued September 29, 2004, as clarified by the Court's Order of October 1, 2004, the Court finds that, upon the stipulation of the plaintiffs at the Status Conference held by the Court on October 19, 2004, the defendants' proposed order may be entered as submitted for the most part. The bulk of the defendants' proposed order simply seeks to clarify that items 2 through 8 listed in the Secretary's September 30, 2004 instructions to Interior employees are not subjects of communication that are affected by the Court's September 29, 2004 Order as clarified by the. Court's Order of October 1, 2004. These exclusions will be included in the accompanying Order issued this date to ensure that there are no further "misinterpretations" like the ones described in the preceding section of this Opinion.

Furthermore, to ensure that the Bureau of Indian Affairs will keep the doors of its field offices unlocked during business hours, and to ensure that telephones at Bureau of Indian Affairs offices are answered by actual humans, the Court will clarify that its Order issued September 29, 2004, as clarified by the Court's Order of October 1, 2004 does not affect oral communications between the defendants and the Indian beneficiaries. However, pursuant to the oral stipulation of both parties during the Status Conference held by the Court on October 19, 2004, the final paragraph of the defendants' proposed order shall issue in the following modified form.

> ORDERED that the Court's Order issued September 29, 2004, as clarified by the Court's Order issued October 1, 2004, is not applicable to oral communications, in person or by telephone, between the defendants, their agents, representatives, employees, officers, and counsel and members of the plaintiff class.

This minor modification will be reflected in the accompanying Order issued this date.

## D. The Defendants' Motion to Strike the Plaintiffs' Motion for Reconsideration

The final related matter before the Court is Interior's motion to strike, under Federal Rule of Civil Procedure 12(f), the plaintiffs' motion for reconsideration which, Interior claims, is pervaded in its entirety with "scandalous content." Def.'s Mot. to Strike at 3. Now, the discussion below will attend to the plaintiffs' allegations of misconduct by Interior and Justice agents and officers in some detail, which will undoubtedly incite a bit of indignation from those against whom the allegations are lodged. That, however, is of no moment for this Court. The Court's duty, in this sort of matter, is to analyze the parties' arguments, not to pander to the sensitivities of those of delicate temperament. Interior

has argued that the plaintiffs' allegations are "offensive," Def.'s Mot. to Strike at 3, "scandalous," *Id.* at 1, 2, "wholly inappropriate," *Id.* at 1, an "abuse of ... process," *Id.* at 3, "excess[ive] and abus[ive]," *Id.*, "highly. improper and baseless," *Id.* at 4, "with[out] foundation," *Id.*, "childish yet inflammatory," *Id.*, "highly charged and groundless," *Id.*, and instances of "vile rhetoric," *Id.* Such charges are serious, and indicative of the sort of outrage that is certainly deserving of the Court's more protracted attention. Thus, after discussing the legal standard by which motions to strike are adjudicated, the Court will turn to a fairly detailed discussion of whether or not Interior has correctly characterized plaintiffs' charges.

### 1. Legal Standard

■ Rule 12(f) provides, in relevant part, that "upon motion made by a party within 20 days of service of the pleading upon the party ..., the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Interior's motion to strike requests Rule 12(f) relief solely on the basis that the content of the plaintiffs' motion for reconsideration is "scandalous." Def.'s Mot. to Strike at 2. "Statements are to be stricken as 'scandalous' only when they contain allegations 'that unnecessarily reflect[ ] on the moral character of an individual or state[ ] anything in repulsive language that detracts from the dignity of the Court.' " *Cobell v. Norton,* 224 F.R.D. 1, 5 (D.D.C.2004) (quoting 2 MOORE'S FEDERAL PRACTICE § 12.37[3] at 12–97); *see also In re 2TheMart.com, Inc., Securities Litig.,* 114 F.Supp.2d 955, 965 (C.D.Cal.2000) ("scandalous" includes allegations that cast "a cruelly derogatory light on a party or other person").

■ In order to rise to the level of a strike-worthy, "scandalous" allegation, as that standard is employed in this jurisdiction, the allegation in question must *at least* be found lacking in evidentiary support. *See, e.g., Alexander v. FBI,* 186 F.R.D. 21, 53 (D.D.C.1998) (striking as scandalous charges that an attorney "threatened Plaintiffs' counsel and family" for lack of evidentiary sup-

port); *Pigford v. Veneman,* 215 F.R.D. 2, 4–5 (D.D.C.2003) (striking as scandalous accusations that attorney displayed a "racist attitude" as devoid of evidentiary foundation); *In re Johnson,* 236 B.R. 510, 523 (D.D.C. 1999) (striking as scandalous allegations that bankruptcy trustee was a "liar" because they were "so devoid of necessary evidence ... that they amount to little more than name-calling").

■■ The resolution of motions to strike lies firmly within the discretion of the Court, *Cobell,* 224 F.R.D. 1; and such motions are generally disfavored, being regarded as "time wasters." 2A MOORE'S FEDERAL PRACTICE § 12.21, at 2419. As such, motions to strike should be denied "unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation," *Ulla–Maija, Inc. v. Kivimaki,* 2003 WL 169777, at *4 (S.D.N.Y.2003), or "unless it can be shown that no evidence in support of the allegations would be admissible." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976). Applying these standards to the issues presented here, the Court finds that the language in the plaintiffs' motion for reconsideration that is the subject of Interior's motion to strike does not rise to the level of "scandalous" for Rule 12(f) purposes. Thus, the Interior defendants' motion to strike will be denied.

### 2. The Plaintiffs' Allegations that Interior Seeks to Strike

■ The bulk of the language that Interior is concerned to strike from the plaintiffs' motion has to do with either: (1) the honesty and ethical behavior of Interior officials; or (2) the honesty and ethical behavior of Interior's counsel at the Department of Justice. Examples of these sorts of allegations, as described in Interior's motion to strike, include claims: that "government counsel [are] 'attorneys who habitually breach their ethical duties[;]' " that "Norton 'and her managers and counsel have no trouble exploiting ... the weakest class members;' " that "[r]easonably well trained monkeys would ensure a more intellectually honest and accurate 'accounting;' " that the Trustee–Delegates at Interior might be "dense"; that Interior has

used the Court's May 28, 2004 Memorandum and Order "as a license to transmit fraudulent statements to Indian children and *non compos mentis;* " that certain trust beneficiaries are "targeted" by Interior; and so forth. Def.'s Mot. to Strike, at 4 (quoting Pl.'s Mot. for Reconsid. at 3 n. 2, 6, 18). Other examples are cited that need not be reproduced here. Suffice it to say that they are of the same tone.

While such statements may be inflammatory, and perhaps ill-advised, they simply do not rise to the level of "scandalous" sufficient to warrant relief under Rule 12(f). First, the allegations Interior is challenging are all made in the context of the broader challenge that plaintiffs lodge against Interior's ability and willingness to fairly and adequately administer the Indian trust and render the requisite accountings. All the plaintiffs' allegations of dishonesty and misconduct have to do with actions taken by the individuals mentioned in the plaintiffs' motion for reconsideration either in their capacity as Trustee–Delegates or as counsel for Interior in this litigation. Far from having "no possible bearing on the subject matter of the litigation," *Kivimaki,* 2003 WL 169777, at \*4, these allegations go to the very heart of the plaintiffs' claims—that Interior and Interior officials have continually, grossly, and sometimes intentionally mismanaged the Indian trust; and that they have misrepresented both the nature of their involvement in that mismanagement and the scope of Interior's systemic problems to this Court.

After all, it is not as though agents of Interior have never been accused of intentional misconduct in this case. *See, e.g., Cobell,* 224 F.R.D. 1 (denying Interior's motion to strike plaintiffs' notice claiming that Interior was allowing the destruction of trust records and intentionally failing to report dangerous conditions in which such records are stored). To the contrary, such misconduct, time and time again confirmed throughout this litigation, has prompted the Court to grant various forms of relief just so that the *litigation itself* may be successfully completed. *See, e.g., Cobell,* 212 F.R.D. at 20–21 (restricting Interior's communications with class members to prevent interference with

class rights); Memorandum Opinion and Accompanying Order, Issued Sept. 29, 2004 (supplementing Dec. 23, 2002 Order as applied to communications related to the sale, exchange, transfer, or conversion of Indian trust land for the same reasons).

Although the Court of Appeals vacated this Court's September 17, 2002 Order finding Secretary Norton and former Assistant–Secretary of the Interior for Indian Affairs McCaleb in civil contempt of court for various violations of Court orders and fraud on the Court, *see Cobell v. Norton,* 226 F.Supp.2d 1 (D.D.C.2002), *vacated by Cobell v. Norton,* 334 F.3d 1128, 1145–50 (D.C.Cir. 2003), the Court's findings of fact upon which the contempt orders were predicated were not vacated on remand, and thus "the Court will treat those factual findings as having been established." *Cobell v. Norton,* 283 F.Supp.2d 66, 85 (D.D.C.2003).

In the Court's Memorandum Opinion accompanying the above-mentioned contempt orders, specific instances of misconduct by Interior officials, agents, and counsel are discussed at length. *See, e.g., Cobell,* 226 F.Supp.2d at 29–46, 113–118 (detailing Interior's perpetration of a "sham Federal Register process that greatly misled this Court" in order to mask the reality that "[b]etween December 21, 1999 and July 10, 2001, the Department of ·Interior failed to take any substantive steps towards completing the required historical accounting of the IIM trust accounts" despite the Court's finding that Interior was required by statute to do so); *Id.* at 46–88, 122–24 (explaining at length how Interior repeatedly misrepresented its progress in deploying the Trust Asset and Accounting Management System ("TAAMS") to the Court, plaintiffs, and class members, after "it became obvious to the Department [of Interior] that it would not be able to implement TAAMS either in the manner that it had described or during the time period that it had provided to the Court"); *Id.* at 88–99, 124–27 (describing the various "false and misleading" quarterly status reports filed with the Court by Interior relating to the process of cleaning up IIM trust data); *Id.* at 100–112, 127–30 (finding that Interior had repeatedly made "false and misleading

representations starting in March 2000, regarding computer security of IIM trust data").

In vacating this Court's contempt order, the Court of Appeals found that there was insufficient evidence that the conduct of Interior was intentionally or knowingly fraudulent to support a contempt finding; and that contempt could not lie against current Interior officials for actions of their predecessors. *See Cobell*, 334 F.3d at 1147–50. This holding, however, neither set aside this Court's findings of fact nor rendered them somehow less damning. The test for whether an allegation may be stricken as "scandalous" does not require that the allegation be conclusively proven, only that it be colorable. The record in the contempt proceedings alone leaves no doubt that allegations of misconduct, and indeed of intentional misconduct, by Interior and its attorneys are not only colorable but couched in an extensive factual record.

Of course, the evidence is not limited to that adduced in the contempt proceeding. On December 22, 1999, the Court found by clear and convincing evidence "that Bruce Babbitt, Secretary of the Interior; Robert Rubin, Secretary of the Treasury; and Kevin Gover, Assistant Secretary, Department of the Interior are in civil contempt of this court's First Order of Production of Information, issued November 27, 1996 and subsequent Scheduling Order of May 4, 1998." *Cobell v. Babbitt*, 37 F.Supp.2d 6, 15 (D.D.C. 1999). The Court found that these officials both "failed to produce documents responsive to plaintiffs' discovery requests [and] lied about their failure to clean up a rodent infestation that infected trust records at a Nebraska document storage facility; . . . a rodent infestation in an Albuquerque document facility that housed 'thousands of uninventoried boxes of IIM documents[;]' . . . and the destruction of documents and microfiche by the Department of the Treasury." *Cobell*, 224 F.R.D. at 3 (discussing *Cobell*, 37 F.Supp.2d at 15, 22 n. 8, 28).

Furthermore, on December 23, 2002, the Court concluded that there existed "reliable evidence" that Robert D. McCallum, Stuart E. Schiffer, J. Christopher Kohn, Sandra P. Spooner, John T. Stemplewicz, and Cythia L. Alexander, all attorneys representing various defendants, had participated in Interior's efforts to contact class members without the authorization of class counsel by mailing out the first batch of *statements* discussed herein. *See Cobell v. Norton*, 212 F.R.D. 14, 23 (D.D.C.2002). The Court explained that the evidence "indicate[d] that defense counsel's participation in the efforts to produce the statements of account constituted a violation of Rule 4.2(a)" of the District of Columbia Rules of Professional Conduct, also known as the "anti-contact" rule.[6] *Id.* The Court Ordered that "this matter shall be referred to the Committee on Grievances of the U.S. District Court for the District of Columbia for an investigation of the conduct of defense counsel," *Id.* at 24, because, "[i]n the face of such misconduct, it would be an act of negligence for this Court to stand idly by." *Id.* Although the grievance committee found that no further action was necessary, the Court again notes that allegations need only be colorable, not conclusively proven, in order to survive a motion to strike. In the face of the nearly perpetual questionable conduct by defendants and their counsel, it would be a similar act of negligence for this Court to go along striking allegations as though they did not have a ring of truth simply because the defendants find them unsavory. If seeing their conduct described in writing is so disturbing, perhaps Interior and its counsel should consider conducting themselves differently.

Returning to the subject of Interior's care and handling of IIM trust documents, it should not escape mention that former Special Master Alan Balaran filed numerous reports detailing the "disturbing (and undisputed) . . . lack of care" with which Interior has safeguarded information and documentation related to IIM trust accounts. *Cobell*, 224 F.R.D. at 3. *See, e.g.,* Report of the Special

---

**6.** Rule 4.2(a) provides: "During the course of representing a client, a lawyer shall not communicate or cause another to communicate with a party known to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so."

Master Regarding Site Visits to Area Agency Offices (Apr. 25, 1999) (documenting lack of proper storage and maintenance of trust records and data at several agency offices); Third Report of the Special Master Regarding Site Visits to Area and Agency Offices (Nov. 12, 1999) (describing trust records sitting in puddles of water; near stacks of fertilizer; and in a shed near canisters of gasoline and various detritus); Report of the Special Master Regarding the Destruction of Eleven Boxes of Treasury Securities by the Fort Worth Federal Record Center (Jan. 9, 2001); Site Visit Report of the Special Master to the Office of Information Resources Management in Reston, Virginia (Mar. 12, 2001) (detailing gaps in records-security at that office and the discovery of the shredded remains of IIM account-related documents on site); Emergency Report of the Special Master Regarding Defendants' Proposed Relocation of Records to the Lee's Summit Federal Records Center at 22–23 (Apr. 17, 2002) (documenting decision of senior Interior/Office of the Special Trustee officials to transport 32,000 boxes containing active IIM trust account-related documents to Lee's Summit Federal Records Center "without regard to the consequences" and with "an utter indifference to the safety of these records or to the ability of IIM beneficiaries to have access to vital information").

In denying a very similar motion to strike plaintiffs' allegations related to Interior's mishandling of trust documents, this Court noted that:

"defendants have yet again failed to notify the Court when trust records are in jeopardy or actually damaged. Defendants' obligation to report on the safety of trust records is undisputed. The Court ... directed defendants to 'file with the court and serve upon plaintiffs quarterly status reports setting forth steps that defendants have taken to rectify the breaches of trust declared today and to bring themselves into compliance with their statutory trust duties' .... [T]he Court assumed defendants would not omit pertinent facts or file reports containing half-truths. The Court's trust was clearly misplaced.... Interior's failure to report these happenings appears deliberate."

*Cobell,* 224 F.R.D. at 5. To say that Interior has not "prioritized" its duties as Trustee–Delegate for the IIM trust would be an understatement. As this Court and the Court of Appeals have noted, "[t]he Interior Department has failed to discharge the fiduciary duties it owes to IIM beneficiaries for decades." *Cobell v. Norton,* 240 F.3d 1081, 1110 (D.C.Cir.2001).

Again, it is certain that the plaintiffs' allegations are neither utterly devoid of an evidentiary basis nor utterly impossible to support with admissible evidence, which is the test for Rule 12(f) "scandalous" material in this jurisdiction. Any evidence in addition to the above documenting breaches of trust, breaches of fiduciary duties, violations of court orders, frauds on or misrepresentation to the Court, or other misconduct by Interior or defense counsel that is related to the management of the IIM trust or to the conduct of this litigation would be both directly relevant and almost certainly admissible. In conducting civil bench trials, trial courts are afforded broader than usual latitude to admit evidence as they see fit, even hearsay evidence the Judge deems reasonably reliable and probative. *See Cobell,* 224 F.R.D. at 4; *see also General Elec. Co. v. Joiner,* 522 U.S. 136, 141–42, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Harris v. Rivera,* 454 U.S. 339, 346, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981); McCormick on Evidence 137 (2d ed.1972).

The above-mentioned instances of Interior's negligence and questionable practices are but a few bricks in a wall of administrative bungling, recalcitrance, and dereliction of duty stretching back more than a century and adversely affecting 500,000 or more of the most historically oppressed, marginalized, and dispossessed people in the United States. The assertion that the plaintiffs' allegations of misconduct by Interior are "groundless," "baseless," or "excessive" is as laughable as it is disturbing. If Interior remains unable to recognize its own sordid history of mismanagement and neglect, then that history will likely continue to be repeated until there is no trust left to manage. For the sake of the beneficiaries, the survivors of the "contentious and tragic" history of

federal-Indian relations, *Cobell*, 240 F.3d at 1086, this Court cannot allow Interior to erase all reference to its misdeeds, both past and present, from the record in this case. However, even if Interior were to succeed in "sanitiz[ing]" the plaintiffs' pleadings, Def.'s Mot. to Strike at 5, by deleting all charges of misconduct, nothing can remove the stain of Interior's actions from the record in this case. The factual record herein will likely stand for generations as a cautionary tale for those who would unquestioningly surrender their welfare, or the welfare of others, to the care of the administrative state.

Because the allegations targeted by Interior's motion to strike do not rise to the level of "scandalous" material sufficient to warrant relief under Rule 12(f), the Interior defendants' motion will be denied.

### CONCLUSION

For the reasons set forth above, the Interior defendants' first and second submissions to the Court in compliance with the Court's Order issued May 28, 2004, will be approved subject to the conditions enumerated herein, in the accompanying Order, and in the May 28, 2004 Order; the plaintiffs' motion for reconsideration will be denied; and the Interior defendants' motion to strike will be denied.

A separate Order will issue this date.

### ORDER

Upon consideration of: (1) the Interior defendants' First Submission [2600] in Compliance With May 28, 2004 Memorandum and Order Regarding Historical Statements of Account; (2) the Interior defendants' Second Submission [2628] in Compliance With May 28, 2004 Memorandum and Order Regarding Historical Statements of Account; (3) the plaintiffs' Motion [2647] for Reconsideration of the Court's May 28, 2004 Order Regarding Historical Statements of Account; (4) the Interior defendants' Motion [2682] to Strike Plaintiffs' Motion for Reconsideration of the Court's May 28, 2004 Order Regarding Historical Statements of Account and To Admonish Plaintiffs' Counsel to Comply With the D.C. Bar's Voluntary Standards for Civility in Professional Conduct; (5) the Plaintiffs' Proposed Notice [2725] for Communications to Individual Indian Trust Beneficiaries submitted pursuant to this Court's September 29, 2004 Order as clarified by this Court's October 1, 2004 Order; and (6) the Interior Defendants' Proposed Notices [2724] for Class Communications submitted pursuant to this Court's September 29, 2004 Order as clarified by this Court's October 1, 2004 Order; the oppositions thereto; the replies; the entire record herein; and for the reasons set forth in the Memorandum Opinion issued this date; it is hereby

ORDERED that the plaintiffs' Motion [2647] for Reconsideration of the Court's May 28, 2004 Order Regarding Historical Statements of Account is DENIED; and it is further

ORDERED that the Interior defendants' Motion [2682] to Strike Plaintiffs' Motion for Reconsideration of the Court's May 28, 2004 Order Regarding Historical Statements of Account and To Admonish Plaintiffs' Counsel to Comply With the D.C. Bar's Voluntary Standards for Civility in Professional Conduct is DENIED; and it is further

ORDERED that the Interior defendants' First Submission [2600] in Compliance With May 28, 2004 Memorandum and Order Regarding Historical Statements of Account is APPROVED IN PART AND DENIED IN PART subject to the conditions set forth in this Order and the Memorandum Opinion issued this date; and it is further

ORDERED that the Interior defendants' Second Submission [2628] in Compliance With May 28, 2004 Memorandum and Order Regarding Historical Statements of Account is APPROVED subject to the conditions set forth in this Order and the Memorandum Opinion issued this date.

With respect to the Historical Statements of Account, and in accordance with this Court's Memorandum and Order issued May 28, 2004, the Memorandum Opinion issued this date, and this Order, it is hereby

ORDERED that the Interior defendants shall send out supplemental notices to the 1,208 IIM account holders to whom it has already mailed historical statements of ac-

count in accordance with the procedure outlined in this Court's May 28, 2004 Memorandum and Order, the Memorandum Opinion issued this date, and this Order; and including the following notice:

Please be aware that many Individual Indian Money ("IIM") account holders are members of a class action lawsuit, *Cobell v. Norton*, No. 1:96CVo1285 (D.D.C.) (Judge Lamberth). In October 2002 the above-referenced IIM account holder received a historical statement of account, along with a cover letter notifying the account holder of the action they should take if they wanted to challenge the accuracy of that statement. Nothing in this notice, the notice, historical statement of account and other documents the above-referenced IIM account holder received in October 2002, or any other letter, document, or communication to which this notice may be attached will eliminate or adversely affect any rights that the above-referenced IIM account holder may have if he or she is a class member in the *Cobell* litigation. The above-referenced IIM account holder will not eliminate or adversely affect any rights that he or she may have as a class member by failing to challenge the historical statement of account he or she received in October 2002.

As a potential class member, the above-referenced IIM account holder has the right to consult with the class counsel in the *Cobell* litigation about the historical statement of account he or she received in October 2002 or any other matter. For further information you may contact the lawyers for the class members: Dennis M. Gingold, Esq., 607 14th Street, N.W., 9th Floor, Washington, DC 20005, phone: (202) 824–1448, fax: (202) 318–2372, email: dennismgingold@aol.com, or Keith Harper, Esq., Native American Rights Fund, 1712 N Street N.W., Washington, DC 20036–2976, phone: (202) 785–4166, fax: (202) 822–0068, email: harper@narf.org. You may also access further information at the plaintiffs' website, www.indian-trust.com.

It is FURTHER ORDERED that the defendants are hereby permitted to send the 17,096 historical statements of account described in the Interior defendants' First Submission [2600] in Compliance With May 28, 2004 Memorandum and Order Regarding Historical Statements of Account; in accordance with the procedure outlined in this Court's May 28, 2004 Memorandum and Order, the Memorandum Opinion issued this date, and this Order; and including the following notice:

Please be aware that the Individual Indian Money ("IIM") account holder for whom the historical statement of account to which this notice is attached was prepared may be a member of a class action lawsuit, *Cobell v. Norton*, No. 1:96CVo1285 (D.D.C.) (Judge Lamberth). Nothing in this notice, the attached historical statement of account, or any letter, document, or other communication to which this notice may be attached will eliminate or adversely affect any rights that the IIM account holder for whom the attached historical statement of account was prepared may have if he or she is a class member in the *Cobell* litigation. The IIM account holder for whom the attached historical statement of account was prepared will not eliminate or adversely affect any rights that he or she may have as a class member by failing to challenge the attached historical statement of account.

As a potential class member, the IIM account holder for whom the attached historical statement of account was prepared has the right to consult with the class counsel in the *Cobell* litigation about this historical statement of account or any other matter. For further information you may contact the lawyers for the class members: Dennis M. Gingold, Esq., 607 14th Street, N.W., 9th Floor, Washington, DC 20005, phone: (202) 824–1448, fax: (202) 318–2372, email: dennismgingold@aol.com, or Keith Harper, Esq., Native American Rights Fund, 1712 N Street N.W., Washington, DC 20036–2976, phone: (202) 785–4166, fax: (202) 822–0068, email: harper@narf.org. You may also access further information at the plaintiffs' website, www.indian-trust.com.

It is FURTHER ORDERED that the Interior defendants are not permitted to send out 8,435 additional historical statements of account that are described as "expected to be completed by July 6, 2004" in the Interior defendants' First Submission [2600] in Compliance With May 28, 2004 Memorandum and Order Regarding Historical Statements until this Court grants final approval on the conditions outlined in this Court's May 28, 2004 Memorandum and Order, the Memorandum Opinion issued this date, and this Order.

It is FURTHER ORDERED that any and all subsequent mailings of historical statements of account shall first be submitted to this Court as required by this Order, the Memorandum Opinion issued this date, the Court's May 28, 2004 Memorandum and Order, and the Court's Memorandum and Order issued December 23, 2002.

With respect to this Court's Order issued September 29, 2004, as clarified by the Court's Order issued October 1, 2004, it is hereby

ORDERED that neither the Court's Order issued December 23, 2002 nor the Court's Order issued September 29, 2004, as clarified by the Court's Order issued October 1, 2004, places any restriction on communications, written or oral, between Defendants, their agents, representatives, employees, officers, and counsel and members of the plaintiff class regarding:

1. Encumbrances, leasing, lease sales, permitting, rights-of-way, and timber sales of or on individually-owned Indian trust land;

2. The investment of trust funds in IIM accounts;

3. Estate planning, will drafting and the probate of or relating to Indian trust assets;

4. The surveying or appraisal of trust assets;

5. Title to trust lands;

6. Ownership of trust funds or lands; or

7. Physical improvement or alteration of trust assets.

It is FURTHER ORDERED that the Court's Order issued September 29, 2004, as clarified by the Court's Order issued October 1, 2004, is not applicable to oral communications, either in person or by telephone, between the defendants, their agents, representatives, employees, officers, and counsel and members of the plaintiff class.

With respect to communications between Interior and individual Indians regarding the sale, exchange, transfer or conversion of Indian trust land; and in accordance with the Court's Order issued September 29, 2004, as clarified by the Court's Order issued October 1, 2004, and the Memorandum Opinion issued this date; it is hereby

ORDERED that any and all communications between the Defendants, their agents, representatives, employees, officers, and counsel and members of the plaintiff class related to the sale, exchange, transfer, or conversion of Indian trust land that are not excepted by this Order must include the following notice:

Please be aware that the Indian trust land owner to whom the communications or documents to which this notice is attached were directed may be a member of a class action lawsuit, *Cobell v. Norton*, No. 1:96CVo1285 (D.D.C.) (Judge Lamberth). Nothing in this notice or any letter, document, or other communication to which this notice may be attached will eliminate or adversely affect any rights that the Indian trust land owner who received this notice may have if he or she is a class member in the *Cobell* litigation. The Indian trust land owner who received this notice will not eliminate or adversely affect any rights that he or she may have as a class member by entering into any transaction or communication with any other person or organization, including the Department of the Interior or the Bureau of Indian Affairs, related to the sale, exchange, transfer, or conversion of Indian trust land.

As a potential class member, the Indian trust land owner who received this notice has the right to consult with the class counsel in the *Cobell* litigation prior to any proceeding with any further communication or transaction. For further information you may contact the lawyers for the

class members: Dennis M. Gingold, Esq., 607 14th Street, N.W., 9th Floor, Washington, DC 20005, phone: (202) 824–1448, fax: (202) 318–2372, email: dennismgingold@aol.com, or Keith Harper, Esq., Native American Rights Fund, 1712 N Street N.W., Washington, DC 20036–2976, phone: (202) 785–4166, fax: (202) 822–0068, email: harper@narf.org. You may also access further information at the plaintiffs' website, www.indiantrust.com. The Indian trust land owner who received this notice may also choose to waive his or her right to consult with class counsel. If the Indian trust land owner who received this notice wishes to do so, he or she must mark the blank below, sign, and return this notice to the Bureau of Indian Affairs office from which you received it within ten (10) days. Waiver of the right to consult with class counsel will not eliminate or adversely affect any rights that the Indian trust land owner who received this notice may have as a class member in the *Cobell* litigation.

_____ I, the undersigned, hereby waive my right to consult with class counsel in the Cobell litigation before continuing with communications or transactions involving or resulting in the sale, exchange, transfer, or conversion of Indian trust land.

SO ORDERED.