# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JACK JORDAN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-1868 (RC) |
| | : | | |
| v. | : | Re Document No.: | 40, 41, 43, 50, 55 |
| | : | | |
| U.S. DEPARTMENT OF LABOR, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**DENYING PLAINTIFF'S "MOTION TO DISQUALIFY JUDGE CONTRERAS"; DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANT'S MOTION FOR EXTENSION OF TIME; DENYING PLAINTIFF'S "MOTION FOR DISCLOSURE AND INCLUSION OF PORTIONS OF THE EMAILS AND OTHER NON-PRIVILEGED EX PARTE COMMUNICATIONS"; DENYING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT; DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

## I. INTRODUCTION

In this Freedom of Information Act ("FOIA") case, Plaintiff Jack Jordan submitted requests with the Office of Administrative Law Judges ("OALJ"), an agency within the United States Department of Labor ("DOL"), seeking unredacted versions of two emails related to Defense Base Act Case No. 2015–LDA–00030 ("DBA Proceedings"), a case in which Mr. Jordan is representing his wife, Maria Jordan, against DynCorp International, Inc. ("DynCorp"). In a prior Opinion, this Court granted summary judgment in favor of DOL with respect to one of the emails. However, finding that DOL had insufficiently justified its withholding of the other email, the Court denied both parties' motions for summary judgment with respect to that email and instructed DOL to either release it or to file a renewed motion for summary judgment with further justification. Now before the Court is DOL's renewed motion for summary judgment. Also before the Court are Mr. Jordan's "Motion for Disclosure and Inclusion of Portions of the

Emails and Other Non-Privileged Ex Parte Communications," Mr. Jordan's request that this judge recuse himself, Mr. Jordan's motion for reconsideration of an order granting DOL an extension of time to file a reply, and DOL's motion for a protective order barring Mr. Jordan from filing future motions without leave of Court and permitting DOL to disregard Mr. Jordan's requests for production. For the reasons explained below, the Court denies all five motions.

## II. FACTUAL BACKGROUND

The Court presumes familiarity with its prior Opinion. *See Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214 (D.D.C. 2017). Accordingly, this Opinion will only briefly describe the facts and allegations that are particularly relevant to the pending motions.

Over a period of seven months, Plaintiff Jack Jordan submitted a series of FOIA requests to DOL, including a request seeking disclosure of any emails, dated July 30 or July 31, 2013, with the subject line "WPS—next steps & actions" that DynCorp's counsel had forwarded to Administrative Law Judge Larry S. Merck. *See Jordan*, 273 F. Supp. 3d at 219–20. DOL found that a string of five separate emails (the "DynCorp emails") fit the bill. *See id.* at 220–21. According to DOL, the DynCorp emails had been reviewed *in camera* by ALJ Merck, who determined that they contained privileged attorney–client communications. *See id.* at 221. DOL concluded that FOIA Exemption 4, which protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential," 5 U.S.C. § 552(b)(4), applied to the unredacted version of the email chain and declined to release it. *Id.* at 221 (alteration in original).

However, DOL disclosed to Mr. Jordan a 2015 letter from the law firm Littler Mendelson, P.C.—which represented DynCorp in the DBA Proceedings—and a redacted version of the DynCorp email thread. *See Jordan*, 273 F. Supp. 3d at 221. The redacted version of the

DynCorp emails disclosed the full contents of three emails in the five-email chain, but revealed only the sender, recipients, date, and subject line of the other two emails. *See id.* at 221. Of the two partially redacted emails, the chronologically first email ("the Powers email") spans roughly three pages, and the second ("the Huber email") spans roughly half a page. *See id.*

The letter from Littler Mendelson stated that it had submitted to ALJ Merck unredacted versions of the emails for *in camera* inspection. Def.'s Cross–Mot. Summ. J. and Opp'n to Pl.'s Corrected Mot. for Summ. J. ("Def.'s Cross–Mot."), Ex. 1, Attach. D at 25, ECF No. 20–1. In the letter, Littler Mendelson maintained that the redacted portions of the email thread "concerned the status of operations issues in connection with the Worldwide Protective Services ('WPS') Program contract, which were transmitted to Christopher Bellomy, Esq.—an in-house lawyer for [DynCorp]—in order to apprise him (and other DI employees with responsibility for the administration and management of the WPS Program contract) of developments potentially impacting the contract." *Id.* Littler Mendelson explained that one redacted email in the chain included the notation "Subject to Attorney Client Privilege." *Id.* Littler Mendelson asserted that the emails "were intended to be, and should remain, privileged among the select group of employees who received the at-issue communication." *Id.*

Mr. Jordan later submitted additional requests related to the Powers and Huber emails. *See Jordan*, 273 F. Supp. 3d at 222–23. Specifically, Mr. Jordan sought documentation in the OALJ's records justifying the decision to withhold the unredacted emails; any documents submitted to OALJ opposing release of records responsive to Mr. Jordan's FOIA request; and any segregable portions of the Powers and Huber emails, including the notation "Subject to Attorney Client Privilege" and any language that constituted an express request for legal advice. *See id.* Mr. Jordan also contended that, for myriad reasons, DynCorp had waived any claim to

privilege. *See id.* at 223. Chief ALJ Stephen R. Henley denied Mr. Jordan's request for purportedly segregable portions of the Powers and Huber emails, reiterating ALJ Merck's ruling that the redacted portions of the DynCorp emails are covered by attorney–client privilege and agreeing with DOL that FOIA Exemption 4 applied to the unredacted version of the email chain. *See id.*

Mr. Jordan commenced this litigation in September 2016. *See* Compl., ECF No. 1. In his complaint, Mr. Jordan sought "[i]njunctive relief ordering the DOL to disclose to [Mr. Jordan] all previously undisclosed versions of the [DynCorp] [e]mails covered by [his request]" and "[j]udgment for reasonable attorneys' fees, if any, expenses, and costs." Compl. at 10–11; Pl.'s Unopposed Mot. Leave Amend Compl., ECF No. 19. Mr. Jordan and DOL each moved for summary judgment, with the primary dispute being whether FOIA Exemption 4 applied to the Powers and Huber emails.[1] *See Jordan*, 273 F. Supp. 3d at 224.

Following *in camera* inspection of the disputed emails, the Court denied in full Mr. Jordan's Corrected Motion for Summary Judgment and granted the DOL's Cross–Motion for Summary Judgment, except with respect to the Huber email. *Id.* at 226–27. The Court concluded that DOL had "describe[d] the DynCorp emails in a detailed manner" and that there was "nothing in the record to question the presumption of good faith that the Court affords the DOL in its explanation." *Id.* at 232. In assessing whether FOIA Exemption 4 applies to the emails, the Court considered whether (1) the information at issue is "commercial or financial," (2) whether the information was obtained from a person, and (3) whether the information was privileged or confidential. *Id.* at 229–30.

---

[1] The Court also resolved a litany of other motions that Mr. Jordan had filed. *See Jordan*, 273 F. Supp. 3d at 224–25, 239–46.

The Court found that both emails were "commercial" or "financial," concluding that DOL had sufficiently justified its contention that the emails pertained to the "status of operations issues in connection with a business contract." *Id.* at 230–31. The Court also determined that both emails were obtained from a person. *Id.* at 231. However, based on DOL's proffered justifications and the Court's *in camera* review, the Court concluded that only one email visibly qualified as privileged. *See id.* at 231–32. Specifically, the Court observed that the justifications for withholding are "much more applicable to the Powers email than they are to the Huber email." *Id.* at 232. The Court explained that the Powers email itself is labelled "subject to attorney–client privilege"; the Huber email is not. *Id.* Likewise, the Powers email contained an express request for legal advice, while the Huber email did not. *Id.* Finding that the Huber email did not necessarily meet the standard for attorney–client privilege—at least based on DOL's justifications—the Court instructed DOL to either release the Huber email or to provide further justification for withholding it. *Id.* In addition, the Court concluded, as relevant here, that DynCorp had not waived its claim to privilege, that DOL had provided all reasonably segregable portions of the Powers email, and that DOL had sufficiently responded to Mr. Jordan's requests for additional information about the DynCorp emails. *See id.* at 232–39.

Since the Court issued its August 4, 2017 Opinion, the parties have filed a number of motions. Mr. Jordan has filed (1) a "Motion for Disclosure and Inclusion of Portions of the Emails and Other Non-Privileged Ex Parte Communications" (ECF No. 40), (2) "Plaintiff's Motion to Reconsider DOL Motion for Extension of Time to File Reply Purporting to Support Summary Judgment" (ECF No. 50) and (3) a "Motion to Disqualify Judge Contreras" (ECF No. 55). DOL has filed (1) a Renewed Motion for Summary Judgment (ECF No. 41) and (2) a

Motion for a Protective Order (ECF No. 43). The Court first addresses Mr. Jordan's motions then considers the motions submitted by DOL.

## III. ANALYSIS

### A. Motions Filed by Mr. Jordan

The Court first considers the three pending motions filed by Mr. Jordan: (1) a "Motion to Disqualify Judge Contreras" (ECF No. 55), (2) "Plaintiff's Motion to Reconsider DOL Motion for Extension of Time to File Reply Purporting to Support Summary Judgment" (ECF No. 50), and (3) a "Motion for Disclosure and Inclusion of Portions of the Emails and Other Non-Privileged Ex Parte Communications" (ECF No. 40). For the reasons explained below, the Court denies all three motions.

#### 1. Motion to Disqualify

Mr. Jordan requests that this judge recuse himself, asserting bias and partiality. Mr. Jordan also contends that, in the course of ruling on the parties' motions in this case, this judge has engaged in criminal conduct. Finding no basis for recusal, this Court denies Mr. Jordan's motion.

"Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges." *United States v. Microsoft Corp.*, 253 F.3d 34, 115 (D.C. Cir. 2001) (quoting Code of Conduct Canon 1 cmt.). Thus, the United States Constitution, federal statutory law, and codes of judicial conduct each prescribe recusal standards under which a judge may—or, under limited circumstances, must—remove himself from a case to safeguard the integrity of the proceedings. *See Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876–77 (2009); *Microsoft Corp.*, 253 F.3d at 113–15. The Supreme Court has explained that "[d]ue process guarantees 'an absence of actual bias' on the part of a judge." *Williams v. Pennsylvania*,

136 S. Ct. 1899, 1905 (2016) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). To comply with the requirements of the Due Process Clause, a judge must recuse himself "when objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). [2] The Supreme Court has recognized only a very few circumstances in which the appearance of bias mandates recusal. *See, e.g.*, *Caperton*, 556 U.S. at 872 (concluding that due process required recusal where a party was a substantial donor to judge's election campaign); *Mayberry v. Pennsylvania*, 400 U.S. 455, 466 (holding that, under some circumstances, it may violate due process when a judge presides over a criminal contempt case that resulted from the defendant's hostility toward the judge); *Tumey v. Ohio*, 273 U.S. 510, 531–32 (1927) (establishing that a judge may not preside over a case in which he has a 'direct, personal, substantial, pecuniary interest").

But "most questions concerning a judge's qualifications to hear a case are not constitutional ones." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Recusal of federal district court judges is more often discussed by reference to 28 U.S.C. § 455.[3] Subsection 455(a) states

---

[2] The Supreme Court described this standard by reference to the Fourteenth Amendment Due Process Clause, which does not apply to the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). This Court presumes, however, that this same standard applies to the federal courts through the Fifth Amendment. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21 (1987) (explaining that the Fifth Amendment Due Process Clause, which applies to the federal government, is generally interpreted consistent with the Fourteenth Amendment Due Process Clause); *cf. Hurd v. Hodge*, 334 U.S. 24, 35 (1948) ("We cannot presume that the public policy of the United States manifests a lesser concern for the protection of such basic rights against discriminatory action of federal courts than against such action taken by the courts of the States.").

[3] The recusal of federal district court judges is also governed by 28 U.S.C. § 144, which calls for recusal "[w]henever a party to a proceeding . . . makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." Mr. Jordan has not filed any affidavit along with his recusal request—let alone a timely and sufficient one—and, in any event, the facts he alleges

that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," unless the parties waive the grounds for disqualification. Section 455(b) enumerates additional grounds under which a judge must recuse. One such reason is "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* § 455(b)(1). To compel recusal under Section 455(a), "the moving party must demonstrate the court's reliance on an 'extrajudicial source' that creates an appearance of partiality or, in rare cases, where no extrajudicial source is involved, the movant must show a 'deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Tripp v. Executive Office of the President*, 104 F. Supp. 2d 30, 34 (D.D.C. 2000) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "The standard for disqualification under § 455(a) is an objective one." *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001). "The question is whether a reasonable and informed observer would question the judge's impartiality." *Id.* To compel recusal under Section 455(b)(1), the moving party must "demonstrate actual bias or prejudice based upon an extrajudicial source." *Tripp*, 104 F. Supp. 2d at 34.

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* (quoting *Liteky*, 510 U.S. at 555). Likewise, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at

---

in his motion do not satisfy the "exacting" standards of § 144. *See United States v. Haldeman*, 559 F.2d 31, 134–35 (D.C. Cir. 1976) (explaining that to satisfy § 144, allegations in an affidavit "must be definite as to time, place, persons, and circumstances" and may not be "merely of a conclusionary nature"). Accordingly, the Court does not assess Mr. Jordan's request under that standard.

555. The D.C. Circuit has counselled that "[a] judge should not recuse himself based upon conclusory, unsupported or tenuous allegations." *In re Kaminski*, 960 F.2d 1062, 1065 n.3 (D.C. Cir. 1992); *see also SEC v. Bilzerian*, 729 F. Supp. 2d 19, 22 (D.D.C. 2010) ("To deter unhappy litigants from abusing the recusal statute and to promote faith in the judicial system, courts have emphasized that a judge has as much an obligation *not* to recuse himself where there is no reason to do so as he does to recuse himself when proper.").

Here, Mr. Jordan lodges myriad allegations of judicial partiality and bias, including that this judge (1) "knowingly, willfully, and repeatedly violated his oath to support and comply with the U.S. Constitution"; (2) has focused on "improper extrajudicial factors," including the marital status of Plaintiff and the DBA claimant and the DBA claimant's gender; (3) made "so many obviously false and misleading and clearly contradictory statements in his August 4, [2017] Opinion that the entire Opinion is evidence of pervasive bias and evidence that fair judgment is impossible"; (4) "has interests that could be substantially affected by this case's outcome"; (5) designed his prior opinion "in a criminal scheme to knowingly falsely contend that the DOL established facts that were crucial to the DOL's defendant, but which he knew the DOL failed to prove"; (6) authorized prohibited ex parte communications; (7) impermissibly relied on *in camera* review to "testify[]" for DOL; (8) "use[d] his [prior] opinion as a platform for criminal harassment and intimidation" by characterizing Mr. Jordan's requests for discovery in this case as a "fishing expedition" and by threatening to sanction plaintiff; (9) engaged in misconduct in violation of 18 U.S.C. § 1001; (10) committed wire fraud; and (11) "directly attempted to defraud Plaintiff of [the] costs of this case." *See* Mot. to Disqualify at 1–45.

Mr. Jordan's allegations of bias, partiality, and criminal behavior on the part of the Court are rambling, entirely unfounded, and—it bears mention—meritless. These accusations certainly

do not meet the standard requiring recusal under Section 455 let alone the more stringent constitutional standard. The probability of bias here does not rise to a constitutionally intolerable level, and no reasonable and informed observer would question this judge's impartiality under the present circumstances. Most of Mr. Jordan's contentions do not require extended discussion as they rest entirely on this Court's rulings, and Mr. Jordan has offered no factual basis to support any claim that this Court harbors favoritism toward Defendant or antagonism toward Mr. Jordan. *See SEC v. Loving Spirit Found. Inc.*, 392 F.3d 486, 494 (D.C. Cir. 2004) ("[W]e have found no case where this or any other federal court recused a judge based only on his or her rulings."); *Caldwell v. Obama*, 6 F. Supp. 3d 31, 43 (D.D.C. 2013) ("To the extent that the plaintiff disagrees with the Court's orders issued to date in this case, such judicial actions alone almost never establish a valid basis for a bias or partiality motion."). The Court briefly addresses some of Mr. Jordan's more pointed contentions.

First, several of Mr. Jordan's accusations appear to take issue with this Court's reliance on *in camera* inspection to confirm the propriety of DOL's withholdings. *See, e.g.*, Mot. to Disqualify at 9–10, 17–28, 42–45. Of course, Congress's directive and the D.C. Circuit's precedents—not Mr. Jordan's preferences— regulate when a district court may rely on *in camera* review. The D.C. Circuit has recognized that "Congress provided district courts the option to conduct *in camera* review under FOIA," and the decision whether to do so is left to "the broad discretion of the trial judge." *American Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 626 (D.C. Cir. 2011). Indeed, the Circuit has clarified that "[a] judge has discretion to order *in camera* inspection on the basis of an uneasiness, on a doubt that he wants satisfied before he takes responsibility for a de novo determination" and that "[t]he ultimate criterion" is "[w]hether the district judge believes that *in camera* inspection is needed in order to make a responsible de

novo determination on the claims of exemption." *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (rejecting a challenge that a court too hastily resorted to *in camera* review). It surely cannot be that this Court's reliance on an authorized practice to evaluate an agency's FOIA withholdings, without more, constitutes conduct that mandates recusal. And Mr. Jordan has provided no factual support for any accusation that this Court was impermissibly motivated to rely on *in camera* review. Mr. Jordan can certainly appeal from this Court's decision to review the disputed documents *in camera*. *See Spirko*, 147 F.3d at 995–98. He has not shown, however, that resort to that method of evaluating DOL's FOIA withholdings requires this Court's recusal.

Second, Mr. Jordan contends that this judge was biased based on the marital status or gender of Mr. Jordan, his client in the DBA Proceedings, or both. *See* Mot. to Disqualify at 28–31. As evidence, he notes that this Court mentioned in its prior Opinion that Mr. Jordan "is representing his wife" in the DBA Proceeding. Mr. Jordan asserts that "that fact must have been profoundly important to Judge Contreras on a personal level" because it is mentioned in the first paragraph of the Court's opinion and because it had no bearing on any of the Court's legal conclusions. Mot. to Disqualify at 28. Mr. Jordan is mistaken. But more importantly for present purposes, he has not offered anything more than conclusory allegations to support his claim of bias and such contentions are plainly insufficient to mandate recusal. *See Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 98, 109 ("[Movant's] 'statements are, at best, general and conclusory,' and contain only 'bald allegations,' which are insufficient to warrant recusal." (quoting *Ivey v. Nat'l Treas. Empls. Union*, No. 05–1147, 2008 WL 4091676, *2 (D.D.C. Sept. 4, 2008))).

Third, Mr. Jordan asserts that "Judge Contreras has a material interest in allowing the DOL to conceal the Emails from Plaintiff." Mot. to Disqualify at 14–15. However, other than baldly asserting that this judge has "essentially made himself the DOL's key witness," Mot. to Disqualify at 14, Mr. Jordan neglects to explain what this judge's interest in this matter might be. Such a claim is plainly insufficient to justify recusal. *See Klayman*, 628 F. Supp. 2d at 109 (explaining that "bald allegations" are insufficient to warrant recusal).

Finally, Mr. Jordan contends that this judge exhibited "open hostility toward Plaintiff" and "sought to intimidate Plaintiff into abandoning his attempts to obtain the Emails." Mot. to Disqualify at 34. Specifically, Mr. Jordan cites, among other things, this Court's admonishment of Plaintiff in its prior Opinion in this matter that his "cavalier approach to sanctions motions could result in him being sanctioned himself." *Jordan*, 273 F. Supp. 3d at 246. This Court stands by its admonishment as entirely appropriate. *Cf. Walsh v. Comey*, 110 F. Supp. 3d 73, 76 (D.D.C. 2015) (denying recusal motion that asserted that the Court had revealed its purported partiality when it described plaintiff's lawsuit as "frivolous," "fanciful," and "fantastical" because the Court concluded that such descriptions were apt). In any event, such evidence shows only this Court's impression of Mr. Jordan's conduct in this proceeding. The Supreme Court has been clear that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases" generally "do not support a bias or partiality challenge," unless the comments reveal an opinion derived from an extrajudicial source or they reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 554. Mr. Jordan has not demonstrated that either circumstance exists here.

In sum, Mr. Jordan has demonstrated nothing other than his disapproval of this Court's prior rulings. He has not shown any basis on which an objective observer might reasonably question this Court's partiality. As the Supreme Court and the D.C. Circuit have explained, "adverse judicial decisions give 'proper grounds for appeal, not recusal.'" *SEC v. Loving Spirit Found. Inc.*, 392 F.3d 486, 494 (D.C. Cir. 2004) (quoting *Liteky*, 510 U.S. at 555). Accordingly, Mr. Jordan's motion requesting that this judge recuse himself is denied.

### 2. Motion to Reconsider Grant of Extension

Mr. Jordan next moves this Court to reconsider an order granting DOL's request for an extension of time to file its reply in support of its renewed motion for summary judgment. *See* Pl.'s Mot. to Reconsider DOL Mot. for Extension of Time to File Reply Purporting to Support Summ. J. ("Mot. to Reconsider Extension"), ECF No. 50. In the relevant order, this Court extended Defendant's filing deadline from September 22, 2017 to September 28, 2017. *See* Def.'s Mot. for Extension of Time to File Reply to Pl.'s Opp'n to DOL's Renewed Mot. for Summ. J. ("Mot. for Extension") ¶¶ 2–4, ECF No. 47; Minute Order (Sept. 21, 2017) (granting defendant's extension request). Mr. Jordan argues that this Court should reconsider, asserting that the Court (1) has "established a pattern of denying Plaintiff due process," (2) failed to properly consider Plaintiff's opposition to the request for an extension, and (3) "deliberately denied plaintiff the opportunity to be heard on" two other motions submitted by DOL. *See* Mot. to Reconsider Extension at 3–6, 10. Finding that reconsideration is not warranted, the Court denies Mr. Jordan's motion.

Motions for reconsideration of interlocutory orders are "within the discretion of the trial court." *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 21 (D.D.C. 2007) (quoting *Lewis v. United States*, 290 F. Supp. 2d 1, 3 (D.D.C. 2003)). The Court may reconsider and revise its

interlocutory orders "as justice requires." *Id.* (quoting *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 122 (D.D.C. 2006)). "Justice may require revision when the Court has 'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (alteration omitted) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004). "Errors of apprehension may include a Court's failure to consider 'controlling decisions or data that might reasonably be expected to alter the conclusion reached by the court.'" *Id.* (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Apart from circumstances where justice requires reconsideration of a court's interlocutory ruling, a court "may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." *In Defense of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 70, 76 (D.D.C. 2008) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)). However, "there must be a 'good reason' underlying the parties' re-addressing an already decided issue." *Id.* "The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2009).

Here, Mr. Jordan seeks reconsideration of the Court's order extending by six days Defendant's deadline to file a reply in support of its renewed motion for summary judgment. Mr. Jordan contends that reconsideration is warranted, asserting that this Court has "established a pattern of denying [him] due process" and alleging that this Court did not properly consider his opposition to Defendant's motion. *See* Pl.'s Corrected Opp'n to DOL's Mot. for Extension of

Time to File Reply Purporting to Support Summ. J. ("Opp'n to Extension") at 1–3, ECF No. 49. To support Mr. Jordan's latter claim, he explains that the Court issued its minute order granting Defendant's request only about two hours after Mr. Jordan filed his opposition to the motion. Opp'n to Extension at 5. Mr. Jordan also notes that, though the minute order was issued on September 21, 2018, the docket entry indicates that the order was "signed" on September 20— the day before Mr. Jordan filed his opposition to Defendant's motion. Opp'n to Extension at 5.

Mr. Jordan has not demonstrated that justice requires reconsidering the Court's order granting Defendant's request for an extension. Mr. Jordan has identified no issue on which the Court misunderstood the parties, no decision made outside the scope of the issues presented to the Court, and no change in the law or facts that would warrant reconsideration. Furthermore, the Court fails to see how its decision to grant a short extension to Defendant could possibly have deprived Mr. Jordan of due process. As for Mr. Jordan's argument that the Court's order demonstrates that it did not properly consider Mr. Jordan's opposition to the request, the Court disagrees. Mr. Jordan's conclusory statements to the contrary do not provide any basis for reconsidering the Court's grant of an extension.

In any event, if the Court were to reevaluate Defendant's request for an extension and Plaintiff's opposition to that request, the Court's ruling would be the same. Federal Rule of Civil Procedure 6(b) commits to a district court's discretion the decision to extend a party's filing deadline. *See Smith v. District of Columbia*, 430 F.3d 450, 456 (D.C. Cir. 2005). Where a party requests an extension before the expiration of the period originally prescribed for the filing, the district court may extend the deadline, in its discretion, "for cause shown." Fed. R. Civ. P. 6(b)(1); *cf. Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (mentioning a district court's "prerogative to manage its docket, and its

discretion to determine how best to accomplish this goal"). Here, Defendant submitted a motion explaining that (1) Plaintiff had filed his opposition to Defendant's renewed motion for summary judgment late on a Friday night, and counsel for Defendant did not access the filing until the next Monday; (2) Plaintiff's opposition brief spanned 37 pages; (3) Defendant's counsel had a prearranged vacation beginning on September 22, 2017 (the date on which the reply was due) and continuing through the weekend; and (4) undersigned counsel had two impending deadlines in other matters. *See* Mot. for Extension ¶¶ 1–3. Counsel for Defendant requested that the Court extend the deadline from September 22 to September 28 and indicated that Plaintiff opposed the motion. Mot. for Extension ¶¶ 4, 6.

In opposition, Mr. Jordan asserted that the Court should deny the request because "DOL already failed to state or adduce evidence establishing dispositive facts"—an argument apparently focusing on the merits of the parties' dispute. *See* Opp'n to Extension at 1–3. Mr. Jordan also argued that counsel for DOL had not established good cause for its requested extension; that DOL had not discharged its obligations under the Local Rules of this court to demonstrate that it had made a good faith effort to narrow the areas of disagreement; that DOL had only implied and had not clearly stated that counsel who had a prearranged vacation was "crucial to the preparation" the reply; that counsel for DOL had failed to identify the particular cases for which he had other impending deadlines and had not indicated whether he had sought extensions in those matters; that counsel for DOL had evaded Plaintiff's request for information about whether other attorneys were working on the reply; and that, based on the date on which Defendant filed its renewed motion for summary judgment, it could have and should have anticipated that its reply would be due on September 22. Opp'n to Extension at 3–8. Contrary to Mr. Jordan's assertions, DOL established cause for the short extension. Furthermore, Mr. Jordan

offered no compelling reason to deny DOL's request.  In this District, requests for extensions of short durations are routine.  The civility of most counsel appearing before this Court results in most requests of this nature premised on prearranged vacations and the press of business being unopposed.  Also routine in this District is the fact that most motions are pending for several months before being resolved due to the press of the Court's business and the volume of substantive motions filed.  Thus, faced with a routine motion for an extension of a short duration based on a prearranged vacation and the press of business, and knowing that the Court was months away from turning its attention to the motion, the Court easily granted the motion and plaintiff suffered no prejudice as a result.  In sum, even if this Court were to reconsider its earlier ruling, it would not revise it.  Mr. Jordan's motion is denied.

### 3. "Motion for Disclosure and Inclusion of Portions of the Emails and Other Non-Privileged Ex Parte Communications"

Mr. Jordan's third and final pending motion contests various aspects of the Court's prior Opinion.  It also asks this Court to disclose (1) a version of the Powers email that shows any attorney–client privilege notation and any non-commercial words stating an express request for advice; (2) any verbal or written communication in which this Court received any factual information about the redacted content of any of the disputed emails or Mr. Bellomy's status as an attorney and whether he was employed in advising DynCorp; and (3) any non-commercial words in DOL's communications with the Court in or with which DOL submitted any version of the Powers email or the Huber email.[4]  Mot. for Disclosure and Inclusion of Portions of the Emails and Other Non-Privileged Ex Parte Communications ("Mot. for Ex Parte Commc'n") at

---

[4] Mr. Jordan initially requested any ECF notices that the Court sent to DOL on October 19 and 25, 2016.  *See* Mot. for Ex Parte Commc'n at 6.  However, he later withdrew that request. *See* Pl.'s Opp'n to DOL's Mot. for Protective Order at 6 n.1, ECF No. 45.

6, ECF No. 40.  Mr. Jordan contends that Federal Rule of Evidence 106, the District of Columbia Code of Judicial Conduct, and notions of fairness require this Court to disclose such information.  *See* Mot. for Ex Parte Commc'n at 17–18.  Having considered Mr. Jordan's contentions, the Court denies the motion.[5]

### a.  Motion for Reconsideration

Much of Mr. Jordan's motion asks this Court to retread ground already covered in this Court's prior Opinion.  Mr. Jordan contends that (1) the Court's findings about the content of the DynCorp emails were not established and were refuted by evidence in the public record; (2) no evidence on record established that Mr. Bellomy was an attorney to DynCorp or that he was giving DynCorp advice regarding the subject matter of the emails; (3) no evidence in the public record established that the Powers email contains the notation "subject to attorney–client privilege"; (4) no evidence in the record established that the emails contained an express request for legal advice; (5) the declaration submitted by Mr. Smyth was "very clearly knowingly false, designed to mislead, and not made on personal knowledge"; (6) there is no legitimate reason for DOL to have failed to disclose a version of the Powers email showing either the notation "subject to attorney–client privilege" or any generic non-commercial words stating an express request for advice; (7) DynCorp waived any privilege covering the emails; and (8) the Court should have assessed Mr. Jordan's request under provisions of the Administrative Procedure Act ("APA").  *See* Mot. for Ex Parte Commc'n.  Because all of the above-mentioned issues were decided in the Court's prior Opinion, the Court construes Mr. Jordan's contentions as a request

---

[5]  The transmittal letter submitted to the Court by Defendant along with the disputed documents contains no factual information.  However, in an abundance of caution, the Court has added that letter to the public record.  *See* Transmittal Letter, ECF No. 58.

for reconsideration. Finding that reconsideration is not warranted, to the extent that Mr. Jordan asks this Court to reconsider its prior determinations, Mr. Jordan's motion is denied.

As the Court explained above, motions for reconsideration of interlocutory orders are "within the discretion of the trial court." *Lemmons*, 241 F.R.D. at 21 (D.D.C. 2007) (quoting *Lewis*, 290 F. Supp. 2d at 3. And a court may reconsider and revise its interlocutory orders "as justice requires," or if there are other good reasons for doing so. *See id.*; *see also In Defense of Animals*, 543 F. Supp. 2d at 75 (citing *Cobell*, 355 F. Supp. 2d at 540). "Justice may require revision when the Court has 'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." *Singh*, 383 F. Supp. 2d at 101 (alteration omitted) (quoting *Cobell*, 224 F.R.D. at 272). "Errors of apprehension may include a Court's failure to consider 'controlling decisions or data that might reasonably be expected to alter the conclusion reached by the court.'" *Id.* (quoting *Shrader*, 70 F.3d at 257). "The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." *Pueschel*, 606 F. Supp. 2d at 85. Indeed, "in order to promote finality, predictability and economy of judicial resources, 'as a rule a court should be loathe to revisit its own prior decisions in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Id.* (brackets omitted) (quoting *Lederman v. United States*, 539 F. Supp. 2d 1, 2 (D.D.C. 2008)).

Mr. Jordan has not met his burden of showing that reconsideration of any issue discussed in the Court's prior Opinion is warranted here. He has identified no issue on which the Court patently misunderstood the parties, no decision outside the adversarial issues presented to the

Court by the parties, no error of apprehension, and no significant or controlling change in the law that might justify reconsideration of this Court's reasoned prior determinations. He has likewise failed to identify any other good reason for revisiting these arguments. Mr. Jordan apparently hopes to reargue factual and legal contentions that this Court has already rejected. He ignores, however that "[i]n this Circuit, it is well-established that 'motions for reconsideration,' whatever their procedural basis, cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting *Secs. & Exch. Comm'n v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)).

Though the Court will not revisit the fine details of its decision again here, it bears briefly explaining that Mr. Jordan appears to misapprehend the applicable legal burden in FOIA cases. Yes, the agency has the burden of proving the applicability of any claimed FOIA exemption. *See Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). But it need not marshal incontrovertible evidence to do so, as Mr. Jordan apparently supposes. Rather, to meet its burden, an agency must "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). DOL has done so here. Accordingly, even if this Court were to reconsider the myriad aspects of its Opinion that Mr. Jordan contests, this Court's ruling would not change. To the extent that Mr. Jordan's motion requests reconsideration of aspects of this Court's prior Opinion, it is denied.

**b. Motion for Disclosure**

In addition to asking this Court to revisit aspects of its prior Opinion, Mr. Jordan asks the Court to disclose certain information. Specifically, Mr. Jordan requests (1) a version of the Powers email that shows any attorney-client privilege notation and any non-commercial words stating an express request for advice; (2) any non-public verbal or written communication in or with which the Court received any factual information about the redacted content of the emails or Mr. Bellomy's status as an attorney and whether he was employed in advising DynCorp; and (3) any non-commercial words in the DOL's communication with the Court in or with which the DOL submitted any version of the Powers email or the Huber email. Mr. Jordan contends that Federal Rule of Evidence 106, the District of Columbia Code of Judicial Conduct, and notions of fairness require this Court to disclose such information. The Court disagrees and denies Mr. Jordan's motion.

First, Mr. Jordan relies on Federal Rule of Evidence 106, which provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Rule 106 partially codifies the common law "rule of completeness," which holds that "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988); *see also* Advisory Comm. Notes on Fed. R. Evid. 106 (explaining that the Rule is based on the "misleading impression created by taking matters out of context" and on "the inadequacy of repair work when delayed to a point later in the trial"). Other Circuits have applied the rule of

completeness "when it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." *United States v. Vargas*, 689 F.3d 867, 876 (7th Cir. 2012) (quoting *United States v. Lewis*, 641 F.3d 773, 785 (7th Cir. 2011)); *see also United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007); *United States v. Hoffecker*, 530 F.3d 137, 192 (3d Cir. 2008). "The application of the rule of completeness is a matter for the trial judge's discretion." *United States v. Washington*, 12 F.3d 1128, 1137 (D.C. Cir. 1994).

It is abundantly clear that neither Federal Rule of Evidence 106 nor general notions of fairness require a government agency or a court to release to a FOIA requester portions of a partially released record that the agency contends are protected by a FOIA exemption. The language of the FOIA statute establishes that portions of an agency record may be properly withheld even if other portions must be released. *See* 5 U.S.C. § 552(B) (instructing courts to "determine whether such [agency] records or *any part thereof* shall be withheld under any of the exemptions set forth in subsection (b) of this section"). Indeed, the application of Rule of Evidence 106 that Mr. Jordan requests would wholly undermine the purpose of these proceedings—which is to assess whether DOL has properly withheld, in whole or in part, any disputed records. Furthermore, the D.C. Circuit has rejected similar "fairness" arguments for disclosure of redacted portions of partially released records. In *Public Citizen v. Department of State*, 11 F.3d 198, 201 (D.C. Cir. 1993), for example, the Circuit rejected "contentions that it is unfair, or not in keeping with FOIA's intent, to permit [an agency] to make self-serving partial disclosures of classified information," explaining that such an argument is "properly addressed to Congress, not to this court." *Id.* at 204. And, in *Williams & Connolly v. SEC*, 662 F.3d 1240 (D.C. Cir. 2011), the Circuit rejected an argument that because the Department of Justice had

released 11 of 114 sets of notes during criminal proceedings, the Department was required to release the remaining notes during subsequent FOIA proceedings that sought documents related to the criminal proceedings. *Id.* at 1244–45. Among other things, the Circuit explained that upholding the FOIA requester's waiver theory would "impinge on executive discretion and [would] deter agencies from voluntarily honoring FOIA requests." *Id.* 1245. These same concerns appear under the circumstances of this case. Federal Rule of Evidence 106 and fairness considerations do not mandate release of the purportedly exempted portions of the partially released email thread.

Second, Mr. Jordan argues that under various provisions of the Code of Judicial Conduct of the District of Columbia, "the [disputed] Emails were received by the Court in an *ex parte* communication that was prohibited" and, thus, the emails—or, at least portions of the emails— must be released to him. Mot. for Disclosure at 33–43. As an initial matter, the Code of Judicial Conduct of the District of Columbia applies to the local courts of the District of Columbia, not to federal courts located in the District of Columbia. *See* J. Comm. on Judicial Admin. Res., D.C. Courts (Feb. 15, 2018) (adopting "the 2018 Edition of the Code of Judicial Conduct for the District of Columbia Courts"); J. Comm. on Judicial Admin. Res., D.C. Courts (Nov. 15, 2011) (adopting an amended version of the 2007 American Bar Association Model Code of Judicial Conduct as the "Code of Judicial Conduct for the District of Columbia Courts"); *see also* Application, Code of Judicial Conduct, D.C. Courts, https://www.dccourts.gov/sites/default/files/divisionspdfs/Code-of-Judicial-Conduct_2018.pdf. Thus, this Court will instead look to the Code of Conduct for United States Judges, which applies to federal court judges, to assess Mr. Jordan's arguments. In pertinent part, Canon 3 of the Code of Conduct for United States Judges states that "[e]xcept as set out below, a judge should not

initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers." Canon 3(A)(4), Code of Judicial Conduct for United States Judges. The provision goes on to state that "[a] judge may initiate, permit, or consider ex parte communications as authorized by law." *Id.* As the Court explained in detail above, courts are plainly authorized to view and inspect disputed documents *in camera* in FOIA cases. *See* 5 U.S.C. § 552 ("In such a case the court . . . may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions."). Furthermore, the decision whether to review documents *in camera* is left to "the broad discretion of the trial judge." *American Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 626 (D.C. Cir. 2011). Because the law plainly authorized *in camera* review of the disputed documents at the heart of this case, the Code of Judicial Conduct for United States Judges certainly does not obligate this Court to release any portion of the disputed documents to Mr. Jordan. Accordingly, Mr. Jordan's motion is denied.

### B. Motions Filed by DOL

The Court next considers the two pending motions filed by DOL: (1) a renewed motion for summary judgment, which asserts that the Huber email is properly withheld pursuant to FOIA Exemption 4, and (2) a motion for a protective order. For the reasons explained below, the Court denies both motions.

**1. Renewed Motion for Summary Judgment**

DOL renews its request for summary judgment with respect to the Huber email, arguing once again that FOIA Exemption 4 exempts that document from disclosure.[6] Def.'s MSJ Mem. at 6–13. Mr. Jordan disagrees, asserting that (1) DOL has failed to show the absence of any genuine dispute of material fact, (2) DOL "relied on false and misleading factual contentions" in its renewed motion, (3) FOIA Exemption 4 does not trump an agency's duty to disclose information under the APA, (4) DOL failed to timely determine whether this email was properly withheld, (5) DOL cannot carry its burden of showing that Exemption 4 applies, (6) the Court must disclose the emails received as a result of ex parte communications, (7) a declaration submitted by Mr. Huber in support of DOL's motion should not be given credence, and (8) DOL has failed to establish that it had released reasonably segregable information from the Huber email. Pl.'s Opp'n to DOL's Renewed Mot. for Summ. J. at 6–37, ECF No. 46. Because the Court finds that the attorney–client privilege does not protect the Huber email, DOL's renewed motion for summary judgment is denied.[7]

As the Court explained in its prior Opinion, FOIA Exemption 4 exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential"

---

[6] DOL also argues that this Court should not permit Mr. Jordan to use a FOIA lawsuit as an end-run around the Office of Administrative Law Judges' determination that the disputed documents were protected by privilege. *See* Def.'s MSJ Mem. at 3 n.1. Though this Court is sympathetic to DOL's position, DOL has failed to provide a legal basis to avoid such a situation. For example, DOL has not argued—and certainly has not demonstrated—that collateral estoppel applies to any determination made by the ALJ. Likewise, DOL has failed to provide any authority supporting the proposition that the Court can ignore the requirements of FOIA based on such equitable considerations.

[7] Because the Court finds that the attorney–client privilege does not protect the Huber email, the Court does not address Mr. Jordan's other arguments for release of that record. Moreover, the Court does not address arguments for reconsideration of the Court's prior Opinion that appear in Mr. Jordan's opposition to DOL's motion for summary judgment. As the Court explained in detail above, Mr. Jordan has not shown that reconsideration is warranted.

matters from disclosure. 5 U.S.C. § 552(b)(4). In non-trade secret cases, the "agency must establish that the withheld records are '(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential.'" *Pub. Citizen v. Dep't of Health & Human Servs.*, 975 F. Supp. 2d 81, 98 (D.D.C. 2013) (citing *Pub. Citizen Health Research Grp. v. FDA*, 704 F. 2d 1280, 1290 (D.C. Cir. 1983)). In this Court's prior Opinion, it determined that the information in the Huber email is "commercial" or "financial" and that the information in question was obtained from a person. *See Jordan*, 273 F. Supp. 3d at 230–31. The Court advised, however, that it "require[d] further briefing focusing specifically on the DOL's justification to withhold the Huber email." Specifically, the matter of whether the Huber email contains privileged or confidential information remains.

DOL's renewed motion for summary judgment argues that information in the Huber email is protected by attorney–client privilege because "the Huber email was specifically conveyed to DynCorp's in-house attorney, Mr. Bellomy, for his review so that he would be able to form a legal basis for advising on and advocating for DynCorp's position regarding the business contract." Def.'s MSJ Mem. at 8. DOL includes a declaration from Mr. Huber. *See* Decl. of Robert A. Huber ("Huber Decl."), ECF No. 41-1. That declaration explains that Mr. Huber worked as Senior Contracts Director for DynCorp at the time of the email exchange. *Id.* ¶ 2. According to Mr. Huber, the DynCorp emails pertained to a situation in which the State Department had "short paid invoices [DynCorp] submitted for processing." *Id.* ¶ 3. Mr. Huber asserts that he copied Mr. Bellomy on the Huber email, which was specifically addressed to Darin Powers, "purposefully" to "keep [Mr. Bellomy] apprised of the [company's] ongoing discussions as they related to the short paid invoices." *Id.* ¶ 4. Mr. Huber contends that he knew from his experience at the company that "[DynCorp's] in-house lawyers would be involved in

any potential claims process with the State Department and, therefore, Mr. Bellomy needed to have a complete understanding of the facts underlying any future claim in order to form a legal basis for advocating [DynCorp's] position with the State Department." *Id.*

The Court disagrees with DOL and concludes that the Huber email is not protected by attorney–client privilege. As the Court explained in its prior Opinion, attorney–client privilege protects "confidential disclosures between an attorney and [its] client regarding factual and legal matters." *Jordan*, 273 F. Supp. 3d at 231 (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)). But, "the mere fact that an attorney is listed as a recipient . . . does not make a document protected under [attorney–client] privilege." *Jordan*, 273 F. Supp. 3d at 231 (quoting *Vento v. IRS*, 714 F. Supp. 2d 137, 151 (D.D.C. 2010)); *see also Neuder v. Battelle Pacific Nw. Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C. 2000) ("[A] corporate client should not be allowed to conceal a fact by disclosing it to the corporate attorney."). Rather, as the D.C. Circuit explained in *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014), "the privilege applies to a confidential communication between an attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client." *Id.* at 757. The Circuit has clarified that the proper inquiry for district courts is "[w]as obtaining or providing legal advice *a* primary purpose of the communication, meaning one of the significant purposes of the communication?" *Id.* at 760. Importantly, "the attorney–client privilege 'exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 757 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)). Equally important, though, is the fact that the D.C. Circuit has emphasized that the "attorney-client privilege must be strictly confined

within the narrowest possible limits consistent with the logic of its principle." *In re Lindsey*, 158

F.3d 1263, 1272 (D.C. Cir. 1998) (quoting *In re Sealed Case*, 676 F.2d 793, 807 n.44).

Here, DOL seems to argue that the Huber email qualifies for protection under the

attorney–client privilege because it was sent as part of DynCorp's broader efforts to address a

legal issue and because it was sent to an in-house attorney to provide him "with a complete

understanding of the facts relevant to the matter that was being discussed in the email." Def.'s

MSJ Mem. at 10. The Court disagrees and concludes that, contrary to DOL's contentions, the

Huber email is not protected by attorney–client privilege and must be produced.[8]

Several factors buttress this conclusion. First, it is difficult to say, under the

circumstances of this case, that one of the primary purposes of the Huber email was to obtain

legal advice. The email is specifically directed to another person—a non-attorney—and the

email specifically (and only) seeks information from that person. It is not at all apparent from

DOL's submissions how Mr. Huber's request that Mr. Powers provide certain information might

in any way shape Mr. Bellomy's legal advice on the business contract or any other legal matter.

DOL's contention that some broader legal problem existed in the background is insufficient to

---

[8] Although Mr. Jordan did not move for summary judgment, the Court concludes that *sua sponte* entry of summary judgment in his favor with regard to the Huber email is warranted. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Bayala v. U.S. Dep't of Homeland Security*, 264 F. Supp. 3d 165, 177 (D.D.C. 2017) (first alteration in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Here, DOL has apparently brought forward all of the evidence that it has. Indeed, DOL has had two opportunities to convince this Court that the disputed document is covered by a FOIA exemption. Having rejected DOL's arguments, no issues remain for this Court to resolve. *See Shipman v. Nat'll R.R. Passenger Corp.*, 76 F. Supp. 3d 173, 181–84 (D.D.C. 2014) (concluding that an agency's claimed FOIA exemptions did not apply and granting *sua sponte* summary judgment in favor of the FOIA requestor). Accordingly, the Court orders DOL to release the Huber email to Mr. Jordan.

connect this specific communication to that legal problem or to any prospective legal problem.[9] Second and relatedly, the Huber email does not appear to contain any factual information on which Mr. Bellomy might rely to form a legal judgment. Rather, it appears to contain a discrete request—directed to one person—that exposes little to nothing about the factual circumstances underlying the problem of the "short paid invoices" or any other legal issue. Third, protection of this document does little to promote the purpose of the attorney–client privilege, which is "to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administrative of justice.'" *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (quoting *Upjohn*, 449 U.S. at 389). Fourth, the Huber email's topic and distribution list appears to be nearly identical to that of the final email in the chain, which was not withheld on the basis of attorney–client privilege. The only difference between the two emails is that the Huber email was copied to an attorney while the final email in the chain was not. As set forth above, simply copying an attorney on a communication does not make that communication privileged. In sum, DOL's arguments that the attorney–client privilege applies to the Huber email are unavailing. DOL's renewed motion for summary judgment is denied, and DOL is ordered to release the Huber email.

---

[9] DOL argues that Mr. Huber copied in-house attorney Mr. Bellomy on the email to keep him apprised of business communications because, *if* a legal dispute arose, Mr. Bellomy would need to "have a complete understanding of the facts underlying any future claim in order to form a legal basis for advocating [DynCorp's] position." Def.'s MSJ Mem. at 8–9 (quoting Huber Decl. ¶ 4). But this concept is virtually limitless—nearly all business communications have some vague connection to a possible, future legal dispute. Sending all business-related communications to an attorney does not render those communications protected under attorney–client privilege.

## 2. Motion for Protective Order

Finally, the Court considers DOL's motion for a protective order. In its motion, DOL contends that Mr. Jordan's "Motion for Disclosure and Inclusion of Portions of the Emails and Other Non-Privileged Ex Parte Communications" "appears to be a harassing, unnecessary, and frivolous motion, which merely causes unnecessary delay and wastes the time of the Court and the parties." Def.'s Opp'n to Mot. for Disclosure & Mot. for Protective Order ("Mot. for Protective Order") at 4, ECF No. 43. DOL asks that this Court grant Defendant "a protective order from responding to Plaintiff's second set of requests for production and any pending motions, and requiring that any future motions be made only with leave of Court." *Id.* Plaintiff opposes entry of a protective order, primarily arguing that there are "unstated illicit purposes behind DOL's motion" and that DOL has failed to provide a statement of facts or to state any specific point of law on which its requests are based. *See* Pl.'s Opp'n to DOL's Mot. for Protective Order at 17, ECF No. 45. Because Defendant has failed to certify that it conferred or attempted to confer with Plaintiff to resolve the disputes for which Defendant seeks a protective order without court action, the Court denies Defendant's motion without prejudice.

Federal Rule of Civil Procedure 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "However, . . . the parties must have first attempted to resolve the issues in good faith before resorting to a court issued protective order." *Convertino v. U.S. Dep't of Justice*, 669 F. Supp. 2d 8, 10 (D.D.C. 2009) (citing Fed. R. Civ. P. 26(c)). "The rule 'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" *Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 19, 22 (D.D.C. 2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

In assessing whether a protective order is appropriate and—if so, how to limit the conditions, time, place, or topics of discovery—the Court is to "undertake an individualized balancing of the many interests that may be present in a particular case." *Id.* (quoting *Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 898 (D.C. Cir. 2006)).

Defendant has neglected to satisfy one of the requirements for seeking a protective order. Namely, Defendant has not "include[d] a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action," as Rule 26 requires. Fed. R. Civ. P. 26(c). Defendant attached along with its motion, a series of email communications between counsel. But none of these communications involve any attempt to narrow the focus of any discovery request or any request that Mr. Jordan cease filing further motions. *See* Def.'s Ex. 2, ECF No. 42-2. Because certification of either good faith or attempts to confer is mandatory, the Court denies Defendant's motion without prejudice. However, Defendant may submit a renewed motion for a protective order, if it wishes and if warranted, that satisfies the requirements of Rule 26(c). But regardless, given that this Court has now ruled on the appropriateness of DOL's withholding pursuant to FOIA of the only two emails at issue in this case, this case is near completion and the necessity for a protective order is—this Court hopes—greatly diminished.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Jordan's "Motion for Disclosure and Inclusion of Portions of the Emails and Other Non-Privileged Ex Parte Communications," Mr. Jordan's request that this judge disqualify himself, Mr. Jordan's motion for reconsideration of an order granting DOL an extension of time to file a reply, DOL's renewed motion for summary judgment, and DOL's motion for a protective order. DOL must release to Mr. Jordan an

unredacted version of the Huber email.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  March 30, 2018                                                  RUDOLPH CONTRERAS
                                                                                    United States District Judge